Tom H. SMITH and George Frankl, individually and as class representatives of all others similarly situated, Appellants–Plaintiffs,

v.

The STATE LOTTERY COMMISSION OF INDIANA, Appellee–Defendant.

No. 49A02–0310–CV–921.

Court of Appeals of Indiana.

Aug. 5, 2004.

Rehearing Denied Oct. 20, 2004.

Richard A. Waples, David R. Brimm, Waples & Hanger, Indianapolis, IN, Attorneys for Appellants.

James W. Clark, Baker & Daniels, John M. Ross, The State Lottery Commission of Indiana, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellants–Plaintiffs Tom Smith ("Smith") and George Frankl ("Frankl"), individually and as Class representatives of all others similarly situated, (collectively, "the Class"), appeal the trial court's grant of summary judgment in favor of Appellee–Defendant the State Lottery Commission ("the Lottery") on the Class's breach of contract claim.[1] We affirm in part, reverse in part, and remand for further proceedings.

### Issue

The Class presents a single issue for review, which we restate as follows: whether the trial court erroneously granted summary judgment to the Lottery because the Lottery closed instant games and refused payment of prizes absent compliance with a contractual obligation to announce game end dates.

### Facts and Procedural History

On direct appeal from the trial court's previous dismissal of Smith's claim, this Court recited the pertinent facts as follows:

> The Lottery began selling instant win scratch-off tickets through its retailers on October 13, 1989, and has since offered hundreds of such games, some running simultaneously. Tickets for some of the games sell for a few months, others for over a year. When Smith purchased his ticket, on September 15, 1996, the back of the card contained the following statement: "All prizes must be claimed within 60 days of announced end of game." [2]
>
> Having discovered that he had a winning ticket, Smith filled out the back of the ticket as required and presented it to the retailer on January 20, 1997, demanding his five dollar prize. Unbeknownst to Smith, the game had ended September 30, 1996, and the last day to claim prizes was on November 29, 1996. The retailer informed Smith that it was too late to redeem his ticket. On January 22, 1997, Smith went to the principal office of the Hoosier Lottery in Indianapolis in an attempt to claim his prize. There he was told that the game was over and that nothing could be done to obtain his prize. There were no signs

1.  In light of the Lottery's decision to publish game end dates at Lottery retailers' establishments, in the Indiana Register, on its website, and on individual tickets, the Class has abandoned its claim for injunctive relief.

2.  Some time after Smith purchased his ticket, the Lottery changed the language on the back of the instant win scratch-off tickets, deleting "announced" before "end of game" and adding advice about where players could learn the game end date. The message now reads: "All prizes must be claimed within 60 days after the end of the game. Ask the game ending dates at any Hoosier Lottery Retailer or call 1–800–955–6886 for customer service." R. at 323.

posted at the retailer's site announcing a closing date for the game,[3] nor was Smith advised by the retailer or the Lottery of an administrative appeal process or given a claim form.

On April 25, 1997, Smith filed a complaint in the trial court against the Lottery for breach of contract seeking damages for himself and for a Class of all persons whose winning scratch-off lottery tickets were rejected by the Lottery as having been untimely presented. Smith also sought equitable relief on behalf of a subclass of future lottery game players in the form of an order requiring the Lottery to either cease denying players their winnings or take reasonable steps to announce the end of instant scratch-off games in the future.

On June 24, 1997, the Lottery filed a motion to dismiss, or in the alternative, for summary judgment. The Lottery claimed that Smith's complaint must be dismissed for lack of subject matter jurisdiction, or alternatively that it was entitled to summary judgment because Smith failed to claim his prize in a timely manner. Smith responded to the dismissal and summary judgment motions, and filed a cross motion for summary judgment, claiming that he was entitled to judgment as a matter of law because the Lottery had never publicly announced the end of the games and could not, under either its contractual obligations to ticket holders or its own regulations, deny ticket holders their winnings. Smith also filed a motion for Class certification which was still pending when the case was dismissed. Following a hearing on October 14, 1997, the trial court granted the Lottery's motion to dismiss. In relevant part, the order of dismissal provided that the court lacked subject matter jurisdiction because Smith had not exhausted his administrative remedies; that an administrative process existed under the Indiana Administrative Orders and Procedures Act, IND. CODE § 4–21.5 et seq.; and that Smith had failed to demonstrate that he was not required to exhaust administrative remedies. *Smith v. State Lottery Comm'n of Ind.*, 701 N.E.2d 926, 928 (Ind.Ct.App.1998), *trans. denied.* This Court determined that Smith's claim came under the Administrative Orders and Procedures Act ("the AOPA") but that he was entitled to judicial review because he had exhausted all available remedies. *Id.* at 933. The case was remanded for judicial review under the criteria of Indiana Code Section 4–21.5–5–14, with the recommendation that the trial court consider certification of a class action. *Id.*

On February 7, 2002, the trial court granted Smith's motion to certify the case as a class action and divided the Class into two subclasses: (A) purchasers of scratch-off lottery tickets between 1989 and 1997 who actually presented a winning ticket to the Lottery or a retailer and were refused or denied payment ("Class A"); and (B) all other purchasers of winning scratch-off tickets between 1989 and 1997 who have not received payment for the winning tickets ("Class B"). The trial court found that Smith was an adequate representative for Class A, but not for Class B. On February

---

**3.** During the period in question, the Lottery did not instruct retailers to publicly post the game end dates, nor did it publish game end dates in the Indiana Administrative Code, where it publishes other, detailed information about the Instant Winner games. *See* 65 IAC 4. This section consists of 317 pages of rules regarding these games. Subsequent to Smith bringing this action, the Lottery, apparently for the first time, began announcing to the public, through postings at retailers' places of business, the last date for winning players to claim their prizes. R. at 220–222, 226.

15, 2002, Frankl petitioned to intervene and represent Class B.[4] The trial court granted Frankl's petition on July 2, 2002.

Initially, in addition to compensation for breach of contract, the Class sought injunctive relief in the form of a court order requiring public announcement of game end dates. However, the Lottery issued formal repeals of each game involved in the class action, and adopted various methods for publishing game end dates prospectively, obviating the necessity of a court order.[5]

On March 11, 2003, the Class filed its motion for summary judgment. On May 27, 2003, the Lottery filed a cross-motion for summary judgment. On July 30, 2003, the trial court heard oral argument on the respective motions. On October 16, 2003, the trial court granted summary judgment to the Lottery. The summary judgment order provides in pertinent part as follows:

1. Plaintiff alleges in his Complaint that the class members are improperly denied the proceeds of winning instant game tickets by Defendant because it requires that all prizes must be claimed within 60 days of the announced end of game and Defendant never announces the end of instant games.

2. Plaintiff argues that Defendant failed to announce and publish the end of its instant games and that public announcement, and a publication of game ending dates in the Indiana Administrative Code are required.

3. Plaintiff contends that the parties' dispute centers on the meaning of the term "announced end of game."

4. The Defendant Lottery Commission is required to adopt rules under IND. CODE § 4–22–2 for verification of tickets claimed to win prizes and to make payment of prizes. IND. CODE § 4–30–11–1.

5. 65 I.A.C. 4 contains the rules which have been promulgated regarding the Defendant's instant games.

6. 65 I.A.C. 4–2–2 provides:
"Any person who purchases an instant ticket agrees thereby to comply with and abide by IC 4–30 ... and all procedures and instructions established by and final decisions of the director in connection with the conduct of the instant game for which the instant ticket is purchased."

7. 65 I.A.C. 4–2–3(a) provides:
"An instant game will end when all instant tickets for that instant game have been sold or on a date announced in advance by the director. The director may suspend or terminate an instant game without advance notice...."

8. Plaintiff contends that the claim of the class is supported by 65 I.A.C. 4–3–2(e) which provides:
"An instant prize must be claimed within sixty (60) days of the announced end of the instant game in

---

**4.** Frankl purchased an instant win scratch-off lottery ticket during 1996. The ticket indicated that Frankl won a prize of one dollar. However, Frankl did not tender his ticket in order to claim his prize, but retained possession of it.

**5.** Effective September 12, 1996, the Lottery repealed 103 instant games. Effective June 15, 1998, the Lottery repealed 132 instant games. Effective July 7, 1999, the Lottery repealed 34 instant games. Effective June 30, 2000, the Lottery repealed 39 instant games. The repeal decisions were published in the Indiana Administrative Code. The parties agree that the Lottery has now repealed all games for which the tickets herein at issue were sold.

which the prize was won or it will be forfeited...."

9. IND. CODE § 4–30–11–7 provides that in the case of an instant game "... the right to claim prizes exists for sixty (60) days *after the end of the lottery game.* If a valid claim is not made for [a] prize within the applicable period, the prize is considered an unclaimed prize ...." (emphasis added)

10. 65 I.A.C. 4–3–4 also provides:

"All liability of the state, its officials, officers, and employees, and of the commission, the director, and employees of the commission for any instant prize terminates upon payment of an instant prize *or upon the expiration of sixty (60) days after the end of the instant game in which the instant prize was won.* ..." (emphasis added)

11. IND. CODE § 4–30–11–9 provides "All unclaimed prize money shall be added to the pool from which future prizes are to [be] awarded or used for special prize promotions."

12. 65 I.A.C. 4–3–2(e) also provides in part:

"All unclaimed prize money or other prizes required to be paid or delivered by the commission shall be added to the pool from which prizes are to be awarded or used for special prize promotions."

13. Any regulation that conflicts with statutory law is invalid, *Lee Alan Bryant Health Care Facilities, Inc. v. Hamilton*, 788 N.E.2d 495, 500 (Ind.Ct.App.2003), and rules and regulations may not be inconsistent with the statute that the commission is administering. *Leslie v. State*, 755 N.E.2d 1147, 1149 (Ind.Ct.App.2001).

14. 65 I.A.C. 4–3–2(e), upon which Plaintiffs rely, conflicts not only with other rules promulgated for the instant games, but also with applicable statutory provisions which Defendant is administering.

15. Plaintiffs are not entitled for [sic] judgment as a matter of law.

16. By reason of the foregoing, Defendant is entitled to judgment as a matter of law.

(App. 15–17.) The Class appeals.

## Discussion and Decision

### I. Summary Judgment Standard of Review

Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. On review of a trial court's decision to grant or deny summary judgment, this Court applies the same standard as the trial court. *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 705 (Ind.Ct.App.1999). We must determine whether there is a genuine issue of material fact requiring trial, and whether the moving party is entitled to judgment as a matter of law. *Id.* Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Id.; see also* Ind. Trial Rules 56(C), (H).

A party seeking summary judgment bears the burden to make a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *Am. Mgmt., Inc. v. MIF Realty L.P.*, 666 N.E.2d 424, 428 (Ind.Ct.App.1996). Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the non-moving party may not rest on its pleadings, but must designate specific facts

demonstrating the existence of a genuine issue for trial. *Id.* The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party. *Shambaugh & Son, Inc. v. Carlisle,* 763 N.E.2d 459, 461 (Ind.2002).

■■■■ On appeal, we will assess the trial court's decision to ensure that the parties were not improperly denied their day in court. *Id.* A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Cansler v. Mills,* 765 N.E.2d 698, 701 (Ind.Ct.App. 2002), *trans. denied.*

## II. Analysis

■■■■ A lottery is contractual in nature, historically having elements of a chance, a consideration and a prize. *Thao v. Control Data Corp.,* 57 Wash.App. 802, 790 P.2d 1239, 1241 (1990). " '[The lottery] is designed to induce many contracts. The entire scheme is presented to the public as a general offer. The scheme prescribes the conditions of acceptance. These conditions require the acceptors to pay something or do something, or both.' " *Seattle Times Co. v. Tielsch,* 80 Wash.2d 502, 495 P.2d 1366, 1369 (1972) (citing F. Williams, *Flexible Participation Lotteries* § 278, at 275 (1938)). A purchaser agrees to the established rules for determining prizes. *Id.; see also* 65 IAC 4–2–2.

■■■■ The elements of a breach of contract action include: (1) the existence of a contract; (2) the defendant's breach of that agreement; and (3) damages. *Wilson*

*v. Lincoln Federal Sav. Bank,* 790 N.E.2d 1042, 1048 (Ind.Ct.App.2003).

The parties herein stipulated to the existence of a contract. Moreover, it is undisputed that a term of the lottery contract at issue is the statement printed on the back of the scratch-off tickets, as follows: "All prizes must be claimed within 60 days of announced end of game." [6] The breach of contract dispute centers upon whether the Lottery breached a material obligation to "announce" a game's end date to facilitate prize claims.

■■■■ Generally, contract language will be given its plain and ordinary meaning. *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 669 (Ind.1997). In pertinent part, "announce" is defined as "to give public notice of; make known officially or publicly; deliver news of" in Webster's Third New International Dictionary (2002).

■■■■ The trial court concluded that, assuming that the Lottery promised to "announce" a game end, it had no legal obligation to do so because of a conflict between its regulation and statutory law. In essence, the trial court declared the contractual provision providing for game end announcement (mirroring the language of I.A.C. 4–3–2(e)) to be illegal because of irreconcilable conflict with Indiana Code Section 4–30–11–7. We disagree with the trial court's conclusion that an irreconcilable conflict exists.

■■■■ Indiana Code Section 4–30–11–7 prescribes payment within sixty days of the end of an instant game. It does not relieve the Lottery of its assumed duty to announce when that game ends. The contractual term providing for "announcement" of game endings is presumptively

---

**6.** At some point, the Lottery also began printing on the tickets the Lottery's toll-free customer service telephone number.

valid. "As a general rule, the law allows competent adults the utmost liberty in entering into contracts which, when entered into freely and voluntarily, will be enforced by the courts." *Peoples Bank & Trust Co. v. Price*, 714 N.E.2d 712, 716 (Ind.Ct.App. 1999), *trans. denied.* Thus, our focus turns to whether the Lottery established, as a matter of law, that it did not breach a material term of the contract by failing to "announce" the ending of the games at issue.

The Class contends that the Lottery did not "announce" game endings because the dates were not disseminated in a manner calculated to reach the public. In the view of the Class, the Lottery materially breached the contract and effectively decreased the likelihood that prizes would be awarded. In response, the Lottery maintains that it fulfilled its obligation of announcement by posting a copy of an "Instant Game Information Sheet" having game end dates in each of its regional office lobbies. The Lottery also provided the information sheets to lottery retailers, with no obligation to publicly post the sheets. Some retailers chose to display the information sheets, either in employee areas or public areas of the businesses. Too, the Lottery employed telephone customer service representatives whose duties included answering inquiries about game end dates. The Lottery argues that it thereby met the reasonable expectations of the purchasers.

■■ Whether a party is in material breach of contract is a question of fact contingent on the following factors:

(a) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated;

(b) The extent to which the injured party may be adequately compensated in damages for lack of complete performance;

(c) The extent to which the party failing to perform has already partly performed or made preparations for performance;

(d) The greater or less hardship on the party failing to perform in terminating the contract;

(e) The willful, negligent or innocent behavior of the party failing to perform; and

(f) The greater or less uncertainty that the party failing to perform will perform the remainder of the contract.

*Wilson*, 790 N.E.2d at 1048–49 (citing *Tomahawk Village Apts. v. Farren*, 571 N.E.2d 1286, 1293 (Ind.Ct.App.1991)). Material questions of fact are not appropriate for resolution by summary judgment. T.R. 56(C). It is for the fact-finder to decide whether the conduct of the Lottery precluded purchasers who tendered their prize-winning tickets from obtaining a substantial benefit of the contract. We therefore reverse the summary judgment order in favor of the Lottery and against the members of Class A.

■ However, summary judgment was properly granted to the Lottery with respect to the claims of the members of Class B because the Lottery's designated materials negated the damages element of their breach of contract claim. The members of Class B elected not to timely tender any lottery ticket for a prize—after either the end date or official repeal of the games—and thus suffered no damages attributable to the conduct of the Lottery.

Affirmed in part, reversed in part, and remanded.

BAKER, J., and DARDEN, J., concur.