Ward ALLEN and Allen's Excavating, Appellants–Plaintiffs,

v.

FIRST NATIONAL BANK OF MONTE-REY and Claiborn Wamsley, Individually and in his capacity as President, George Wamsley, Individually and in his capacity as Sr. Vice President, Randy Howard, Individual and in his official capacity, and Dick Gearhart, Individually and in his official capacity, Appellees–Defendants.

No. 66A04–0506–CV–364.

Court of Appeals of Indiana.

April 18, 2006.

Susan Kozlowski, Kozlowski Law Offices, Crown Point, for Appellants.

Daniel P. Murphy, Murphy Law Office, Winamac, for Appellees.

## OPINION

MAY, Judge.

Ward Allen ("Ward") appeals summary judgment in favor of the First National Bank of Monterey, Claiborn Wamsley, George Wamsley, Randy Howard and Dick Gearhart (collectively "the Bank").[1] Allen contends the trial court erred in granting the Bank's motion for summary judgment because the Bank's perfected security interest does not preclude all liability for damages. We reverse and remand.

## FACTS AND PROCEDURAL HISTORY [2]

On May 20, 1999, Cheyenne Allen ("Cheyenne") borrowed $35,000 from the Bank. The note was secured by a mortgage on real property and by four pieces of equipment including a 1982 Case 580D Backhoe ("the backhoe"), a 1969 JD350 Dozer, a 1983 International Dump Truck and a 1981 Tandem Trailer Beavertail. George Wamsley, the Bank's senior vice president, signed the note for the Bank. The Bank filed Financing Statements on the backhoe with the Pulaski County Recorder on May 25, 1999 and with the Indiana Secretary of State on May 28, 1999.

---

1. The individuals were sued individually and in their capacity as officers or employees of the Bank.

2. We note counsel failed to comply with Indiana Appellate Rule 46. Appellant did not attach a copy of the trial court's Order on Summary Judgment to his brief as required by Ind. Appellate Rule 46(A)(10) ("The brief shall include any written opinion, memorandum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal.").

App. R. 46(A)(5) provides: *"Statement of Case.* This statement shall briefly describe the nature of the case, the course of the proceedings relevant to the issues presented for review, and the disposition of these issues by the trial court[.]" Appellant's Statement of the Case, with which Appellee agrees, merely states: "This is an appeal of the trial court's grant of summary judgment in favor of the Defendants against Plaintiff on all counts. Plaintiff appeals that ruling." (Br. of Appellant at 2; Br. of Appellees at 2.)

In July or August 1999, Cheyenne approached his father Ward about buying the equipment from him. Ward agreed to buy the backhoe for $17,500 on the condition that the Bank would allow Ward to pay the purchase price directly to the Bank instead of to Cheyenne. Ward later talked with both Randy Howard and George Wamsley at the Bank about buying the backhoe and making payments for it directly to the Bank. According to Ward, both men agreed Ward could purchase the backhoe without taking out a new loan by making payments to the Bank. This oral agreement was not reduced to writing.

Ward made monthly payments to the Bank until February 2001.[3] The Bank subsequently notified Ward and Cheyenne that Cheyenne's loan was in default. Dick Gearhart called Ward and his wife Melissa numerous times concerning Cheyenne's note. According to Melissa, Gearhart stated the Bank had no intention of taking the backhoe from them. George Wamsley asked Ward to encourage Cheyenne to make payments but did not ask Ward to pay Cheyenne's note.

On August 28, 2001, George Wamsley and another man went to Ward's house and, after a heated discussion and over Melissa's objections, took the backhoe.[4] Melissa's mother was present during this incident and because she feared for her safety and that of her daughter and grandchildren, she went to her house next door "to get [her] gun." (App. at 115.) Melissa called the police because she felt threatened by George Wamsley and his companion.

In subsequent discussions with the Bank's president, Claiborn Wamsley, Ward learned the Bank had a perfected security interest in the backhoe. In Janu-

ary 2003, Ward sued the Bank for damages, alleging breach of contract, conversion and fraud. In April 2005, the Bank moved for summary judgment on the grounds that its perfected security interest was superior to any interest Ward may have had in the backhoe. The trial court granted summary judgment for the Bank on June 1, 2005, entering findings of fact and conclusions of law.

## DISCUSSION AND DECISION

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). When reviewing summary judgment, we apply the same standard as does the trial court. *Rogier v. Am. Testing & Eng'g Corp.*, 734 N.E.2d 606, 613 (Ind.Ct.App.2000), *trans. denied* 753 N.E.2d 8 (Ind.2001). We do not weigh the evidence; rather, we consider the facts in the light most favorable to the nonmovant. *Id.* Although a summary judgment is clothed with a presumption of validity, we carefully scrutinize the trial court's decision to ensure the nonmovant was not improperly denied his day in court. *Id.*

Specific findings of fact and conclusions of law are neither required nor prohibited in the summary judgment context. *City of Gary v. Ind. Bell Tel. Co., Inc.*, 732 N.E.2d 149, 153 (Ind.2000). Such findings aid our review of a summary judgment, but they are not binding on this Court. *Id.*

Ward argues: "The crux of this appeal is whether or not [the Bank's] perfected security interest absolved the Bank of any liability for acts regarding [the backhoe] that would be a tort, fraud or breach of contract." (Br. of Appellant at 10.) He

---

**3.** Ward believes he paid the full amount for the backhoe to the Bank and to Cheyenne.

**4.** The backhoe was later sold and the proceeds applied to Cheyenne's outstanding loan.

further asserts there are genuine issues of material fact regarding his allegations of breach of contract, fraud and conversion, which issues preclude summary judgment. The Bank responds its perfected security interest is superior to Ward's alleged interest in the backhoe and that the facts negate at least one element of each of Ward's allegations.

■ We assume for purposes of summary judgment there was an oral contract between Ward and the Bank regarding the purchase of the backhoe. As the contract was not reduced to writing, the issue is whether the Bank's perfected security interest trumps the oral contract between Ward and the Bank. It does.

■ Chapter 26–1–9.1 of the Indiana Code is based on Revised Article 9 of the Uniform Commercial Code and governs secured transactions in Indiana.[5] Ind.Code § 26–1–9.1–201 states a security agreement "is effective according to its terms between the parties, against purchasers of the collateral, and against creditors."[6]

The security agreement Cheyenne signed provided he would "not try to sell the property unless . . . [he] receive[d] [the Bank's] written permission to do so." (Appellant's App. at 29.) Although Ward discussed the purchase of the backhoe with the Bank, the security agreement required written permission from the Bank before

Cheyenne could sell the backhoe. The security agreement stated: "No modification of this security agreement is effective unless made in writing and signed by [the Bank] and [Cheyenne]." (*Id.*) While Ward and the Bank may have orally agreed to modify the security agreement and allow Ward to purchase the backhoe, the modification was not effective under the Code because it was not in writing.

Because the modification intended by the oral contract was not effective, the Bank's security interest in the backhoe was superior to any interest Ward may have had. When Cheyenne defaulted on the loan, the Bank as the secured party had the right to take possession of the backhoe. Ind.Code § 26–1–9.1–609(a) ("After default, a secured party . . . may take possession of the collateral.")

A secured party may take possession of collateral after a default "without judicial process, if it proceeds without breach of the peace." Ind.Code § 26–1–9.1–609(b). Accordingly, the Bank had the right to take possession of the backhoe without resorting to judicial process, as it attempted to do, but the Bank did not have a right to breach the peace while doing so. The statute codifies a long-standing principle in American jurisprudence:

> The case . . . presents the question whether the owner of personal property, who is entitled to its possession, may by force retake it against the resistance of

---

5. With some exceptions not relevant to the case before us, these provisions govern transactions entered into and liens created before Chapter 9.1 became effective on July 1, 2001. Ind.Code § 26–1–9.1–702.

6. The dissent suggests the Bank's failure to disclose it had a security interest in the backhoe was concealment of a known material fact. However, the Bank disclosed its security interest in the backhoe by properly filing a financing statement on the backhoe with both the Secretary of State and the Pulaski County

Recorder. "While 'attachment' relates to the creation of a security interest by virtue of execution of a security agreement, 'perfection' is an additional step which makes the security interest effective against third parties." *Citizens Nat'l Bank of Evansville v. Wedel*, 489 N.E.2d 1203, 1205 (1986). A properly filed financing statement "serves as notice to the rest of the world the secured party has taken a security interest in the collateral." *Brown v. Indiana Nat'l Bank*, 476 N.E.2d 888, 891 (Ind.Ct.App.1985), *reh'g denied, trans. denied.*

the one in possession. Blackstone, who is the source of most of our present law, says, on page 4, volume 3, of his Commentaries, that the owner of goods, who has been deprived of the property in them, "may lawfully claim and retake them wherever he happens to find them, so it be not in a riotous manner, or attended with a breach of the peace; * * * that this natural right of recaption shall never be exerted where such exertion must occasion strife and bodily contention, or endanger the peace of society."

*Singer Sewing Mach. Co. v. Phipps*, 49 Ind.App. 116, 123, 94 N.E. 793, 796 (1911), *reh'g denied, trans. denied.*

We addressed what constitutes a "breach of the peace" under a similar predecessor statute: "[I]f the repossession is verbally or otherwise contested at the actual time of and in the immediate vicinity of the attempted repossession by the defaulting party or other person in control of the chattel, the secured party must desist and pursue his remedy in court." *Census Fed. Credit Union v. Wann*, 403 N.E.2d 348, 352 (Ind.Ct.App.1980).

■ Melissa contested the repossession verbally and called the police. Melissa's mother felt sufficiently threatened by the events to retrieve her gun from her home next door. Despite this, the Bank did not desist from repossessing the backhoe and pursue a judicial remedy.

Chapter 9.1 sets out the remedies available when a secured party fails to comply with its provisions. For example, Ind. Code § 26–1–9.1–625 provides, in pertinent part:

(a) If it is established that a secured party is not proceeding in accordance with IC 26–1–9.1, a court may order or restrain collection, enforcement, or disposition of collateral on appropriate terms and conditions.

(b) Subject to subsections (c), (d), and (f), a person is liable for damages in the amount of any loss caused by a failure to comply with IC 26–1–9.1. Loss caused by a failure to comply may include loss resulting from the debtor's inability to obtain, or increased costs of, alternative financing.

(c) Except as otherwise provided in IC 26–1–9.1–628:

(1) a person that, at the time of the failure, was a debtor, was an obligor, or held a security interest in or other lien on the collateral may recover damages under subsection (b) for its loss[.]

Ward had an interest in the backhoe as a purchaser of the collateral. He accordingly may be able to recover damages, if any, caused by the Bank's failure to comply with Ind.Code § 26–1–9.1–609.

The Bank's perfected security interest is superior to Ward's interest in the backhoe. However, the Bank may be liable for its failure to comply with Ind.Code § 26–1–9.1–609. We therefore remand so the trial court may consider this issue.

Reversed and remanded.

KIRSCH, C.J., concurs.

ROBB, J., concurring in part, dissenting in part with separate opinion.

ROBB, Judge, concurring in part, dissenting in part.

I agree with the majority's resolution of the breach of the peace issue. However, because I believe there are issues of material fact with respect to whether the Bank should be estopped to assert a superior interest in the backhoe, I respectfully dissent from the majority's resolution of this issue.

There are several estoppel doctrines, including equitable estoppel, all of which are

based on the same underlying concept: "a person, who, by deed or conduct, has induced another to act in a particular manner, will not be permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to the other." *Roberts v. ALCOA, Inc.,* 811 N.E.2d 466, 475 (Ind.Ct.App.2004). Equitable estoppel is available if one party, through its representatives or course of conduct, knowingly misleads or induces another party to believe and act upon their conduct in good faith and without knowledge of the facts. *American Family Mut. Ins. Co. v. Ginther,* 803 N.E.2d 224, 234 (Ind.Ct.App. 2004). The requirements for equitable estoppel are: 1) a representation or concealment of material facts; 2) made with knowledge, actual or constructive, of the facts and with the intention that the other party act upon it; 3) made to a party ignorant of the facts; and 4) which induces the other party to rely or act upon it to his detriment. *Id.*

The majority assumes there was an oral contract regarding Ward's purchase of the backhoe. *See* op. at 1085. Yet, despite knowing of its security interest in the backhoe, the bank did not disclose this interest to Ward prior to entering into the agreement—concealment of a known material fact. True, a financing statement disclosing the security interest was properly filed. However, the security interest was not disclosed to Ward, and given the informality of the dealings between Ward and the Bank, the Bank had reason to know that Ward would not independently search the records before acting on the Bank's agreement that he need not take out a new loan to purchase the backhoe. Moreover, according to the evidence favorable to Ward, the non-movant, the Bank affirmatively stated an intention not to take the backhoe when Cheyenne's loan went into default. Ward paid the full amount for the backhoe before finding out about the security interest—relying to his detriment on the Bank's agreement without knowing the material facts. Given this evidence, I would hold that there is at least a question of fact regarding the Bank's entitlement to assert its security interest given its conduct and statements prior to repossessing the backhoe.