**WEST AMERICAN INSURANCE COMPANY, Appellant– Defendant,**

v.

**Brenda CATES, Individually and as Personal Representative of the Estate of Bernard Cates, Jr., and Dylan Cates, By His Next Friend, Brenda Cates, Appellees–Plaintiffs.**

No. 42A01–0601–CV–26.

Court of Appeals of Indiana.

Feb. 28, 2007.

Publication Ordered April 17, 2007.

Transfer Denied May 24, 2007.

John E. Birk, Birk & Birk, Jasper, IN, Attorney for Appellant.

David V. Scott, New Albany, IN, James O. McDonald, Everett, Everett & McDonald, Terre Haute, IN, Attorneys for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant West American Insurance Company ("West Am") appeals the denial of its motion for summary judgment on a complaint filed by Brenda Cates, individually and as Personal Representative of the Estate of Bernard Cates, Jr., and as next best friend of Dylan Cates regarding a claim for uninsured motorist coverage under an automobile insurance policy issued to the Cates family by West Am. We affirm.

### Issue

The parties raise several issues, which we consolidate and restate as whether the trial court properly denied West Am's motion for summary judgment.

### Facts and Procedural History

On June 9, 2002, Bernard Cates ("Bernard"), along with his wife, Brenda, and their son, Dylan, were riding in their 2001 Chevrolet Blazer 4x4 proceeding southbound on State Road 61 towards the Ninth Street intersection. Bernard was driving.

When they approached the intersection, Jesse Montgomery ("Montgomery") entered the intersection, striking the Blazer in its left passenger door. The impact of the cars made the Blazer yaw to its left and eventually roll over, one full revolution. Even though he was secured by his seat belt, Bernard was partially ejected from the Blazer and sustained fatal head injuries.

At the time of the collision, Montgomery was operating a 1992 Oldsmobile Cutlass Supreme, owned by his mother, Teresa Merydith, and that vehicle was insured by a policy of liability insurance issued by Globe American Auto Insurance d/b/a Go America Insurance Company ("Go America"). Montgomery was also a named insured for a different vehicle in a policy of insurance issued to his father's business, Mack Montgomery & Sons, Inc., by Grinnell Mutual Reinsurance Company ("Grinnell"). The Cates family vehicle was insured by a policy of liability insurance issued by West Am that included uninsured/underinsured motorist coverage.

On August 22, 2002, Brenda Cates ("Cates") filed this suit ("Cates Lawsuit"), originally against General Motors Corporation ("GM"), Montgomery, and West Am.[1]

In November of 2002 and March of 2003, respectively, Go America and Grinnell filed separate complaints for declaratory judgment as to whether they owed insurance coverage to Montgomery. In their complaints, both insurance companies denied owing coverage. These two declaratory judgment actions were later consolidated. For discovery purposes only, the trial judge also consolidated these cases with the Cates Lawsuit.

---

1. The complaint originally named Ohio Casualty Insurance Group, but the trial court granted West Am's Motion to Substitute.

On October 21, 2003, due to a settlement with Cates for an undisclosed amount, the trial court dismissed GM from the Cates Lawsuit. In the settlement agreement between Cates and GM ("GM Settlement"), GM denied liability.

Then on August 24, 2004, West Am filed a motion for summary judgment. Days later on August 27, 2004, Cates and Grinnell executed a settlement agreement for $250,000 ("Grinnell Settlement"). In the settlement agreement, Grinnell again denied that it owed coverage to Montgomery.

After a jury trial ending on September 9, 2004, on the consolidated complaints for declaratory judgment, Go America and Grinnell were found not to owe insurance coverage to Montgomery. On September 29, 2004, Cates and Go America executed a Covenant Not to Levy, Execute or Attempt to Attach Personal Assets for $20,000 ("Go America Settlement").

Subsequently on October 14, 2004, West Am filed a Motion to Supplement its Motion for Summary Judgment to designate the agreements between Cates, Go America, and Grinnell. Cates filed her response to West Am's supplemental materials on December 20, 2004. Later that day, the trial court denied West Am's motion for summary judgment, finding that there were genuine issues of material fact in dispute, without further explanation. West Am attempted to appeal the decision, however the trial court did not certify the interlocutory appeal. The Indiana Court of Appeals dismissed the appeal due to lack of jurisdiction. *West Am. Ins. Co. v. Cates*, No. 42A01–0501–CV–22, 834 N.E.2d 745 (Ind.Ct.App. Sept. 8, 2005).

After a bench trial, the trial court found in part that:

7. Jesse's [Montgomery] negligence was a proximate cause of the collision.

8. Further as a result of Jesse's negligence, Brenda was deprived of the love, affection and companionship of her husband, Bernard, and Dylan was deprived of the love, affection, companionship, parental guidance and support of his father, Bernard.

9. Further as a result of Jesse's negligence, Brenda and Dylan each sustained a direct impact in the collision and each observed the fatal injury of their husband/father, Bernard, and accordingly suffered emotional trauma.

10. At the time of the collision, there was in force and effect an insurance policy issued by West American to the Cates, policy number FPW25316210, which policy provided the Cates uninsured/underinsured (UM/UIM) coverage with limits of $100,000.00 per person, and $300,000.00 per occurrence. The policy also provided medical/funeral payments coverage with limits of $20,000.00.

11. At the time of the collision, Jesse was an uninsured motorist.

12. As a result of Jesse's negligence, the Estate of Bernard Cates, Jr., incurred damages in the amount of $1,000,000.00, Brenda Cates incurred damages in the amount of $1,000,000.00, and Dylan Cates incurred damages in the amount of $1,000,000.00.

The court now orders and adjudges as follows:

1. The Estate of Bernard Cates, Jr., shall have judgment against Jesse Vaughn Montgomery in the amount of $1,000,000.00.

2. Brenda Cates shall have judgment against Jesse Vaughn Montgomery in the amount of $1,000,000.00.

3. Dylan Cates shall have judgment against Jesse Vaughn Montgomery in the amount of $1,000,000.00.

4. Due to the limits of coverage on West American Insurance Company's UM/UIM policy issued to the plaintiffs, the Estate of Bernard Cates, Jr.,

shall have judgment against West American Insurance Company in the amount of $100,000.00, Brenda Cates shall have judgment against West American Insurance Company in the amount of $100,000.00, and Dylan Cates shall have judgment against West American Insurance Company in the amount of $100,000.00.

Appellant's Supplemental Appendix at 268–69.

West Am now appeals the trial court's denial of its motion for summary judgment.

## Discussion

### I. Denial of Summary Judgment

#### A. Standard of Review

A party who fails to bring an interlocutory appeal from the denial of a motion for summary judgment may nevertheless pursue appellate review after the entry of final judgment. *Villas West II of Willowridge v. McGlothin,* 841 N.E.2d 584, 595 (Ind.Ct.App.2006). West Am's attempted interlocutory appeal was ineffective due to lack of jurisdiction. Because the dismissed interlocutory appeal did not address the merits, West Am may still pursue this appeal of the denial of its motion for summary judgment even though the case proceeded to trial resulting in a final judgment.

Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Bilimoria Computer Systems, LLC v. America Online, Inc.,* 829 N.E.2d 150, 155 (Ind.Ct. App.2005). Our standard of review for summary judgment is the same as that used in the trial court. *Harco, Inc. v. Plainfield Interstate Family Dining Assoc.,* 758 N.E.2d 931, 937 (Ind.Ct.App. 2001). Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Id.* We do not reweigh the evidence. *Allen v. First Nat. Bank of Monterey,* 845 N.E.2d 1082, 1084 (Ind.Ct.App. 2006). Instead, we consider the facts in the light most favorable to the nonmovant. *Id.* We will affirm the denial of summary judgment if it is sustainable on any legal theory or basis found in the evidentiary matter designated to the trial court. *Ford v. Culp Custom Homes, Inc.,* 731 N.E.2d 468, 472 (Ind.Ct.App.2000), *trans. denied.*

Insurance contracts are governed by the same rules of construction as other contracts, and the proper interpretation of an insurance policy, even if it is ambiguous, is generally a question of law appropriate for summary judgment. *Liberty Ins. Corp. v. Ferguson Steel Co., Inc.,* 812 N.E.2d 228, 230 (Ind.Ct.App.2004). Although ambiguities in insurance policies are construed in favor of the insured, clear and unambiguous policy language must be given its ordinary meaning. *Id.*

#### B. Analysis

The documents designated to the trial court for its ruling on the summary judgment motion included the pleadings, the West Am insurance policy issued to Cates, the GM Settlement, GM's responses to West Am's Interrogatories and Request for Production of Documents, the Affidavit of Timothy A. Coulman (a West Am litigation specialist), the Grinnell Settlement, and the Go America Settlement. We limit our review to this designated evidence.

West Am contends the trial court improperly denied its motion for summary judgment because it is entitled to setoffs

for the monies received by Cates from the GM, Grinnell, and Go America settlements. The crux of this case is not a question of double recovery,[2] because no one disputes that the damages incurred exceed the total amounts claimed under the Cates' insurance policy or paid through various settlements. Hence, this case is centered on the contractual obligations mandated by the insurance contract between West Am and Cates.

■ West Am points to the following provision in the Uninsured Motorists Coverage to provide foundation for their setoff contention:

Limit of Liability

. . . .

B. The limit of liability shall be reduced by all sums paid because of the "bodily injury" or "property damage" by or on behalf of persons or organizations who may be legally responsible.

App. At 80. West Am argues that GM, Go America, and Grinnell either may be legally responsible or paid on behalf of a person, Montgomery, who may be legally responsible, making the three settlement payments trigger this setoff provision. Due to the combined settlement amounts exceeding the West Am policy maximum of $300,000, West Am contends that the setoffs it believes it is entitled to would have reduced its liability to zero, supporting its motion for summary judgment.

■ However, Cates contends that West Am breached its insurance contract with Cates by failing to pay to them the proceeds of their uninsured motorist coverage. Cates argues that West Am's failure to pay constitutes an unreasonable delay in the payment of the Cates family's uninsured motorist claim, which now estops West Am from asserting setoff rights.

A contract is "an agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law." Black's Law Dictionary 318 (7th ed.2001). A party breaches a contract when it fails to perform all of the obligations that it has agreed to undertake. *Breeding v. Kye's Inc.,* 831 N.E.2d 188, 191 (Ind.Ct.App.2005).

In *Tate v. Secura Insurance,* our Supreme Court quoted with approval from *Powers v. Calvert Fire Ins. Co.,* 216 S.C. 309, 57 S.E.2d 638, 642 (S.C.1950): "[A]n insurer cannot sit down and hold its hands and purse and thereafter escape liability for fulfillment of its contract by reason of the insured's effort, after fair notice, to recoup his loss by litigation against a wrongdoer." 587 N.E.2d 665, 672 (Ind. 1992) (internal quotations omitted). To the detriment of the Cates family, West Am sat on its hands and purse until Cates obtained partial relief from other parties and now requests this Court to declare its liability to be zero. We decline to reward such behavior and provide incentive to other insurers to follow West Am's example.

West Am was on notice of a potential uninsured motorist claim when Cates filed her lawsuit on August 22, 2002. In response, West Am filed its answer, denying any possible recovery and alleging seven affirmative defenses. Then, West Am sat back, watched and waited. Instead of pursuing Grinnell and Go America, West Am waited for these two insurance companies to file declaratory judgment actions to determine whether they owed insurance coverage to Montgomery. After the declaratory judgments were filed in which both insurance companies denied owing coverage, West Am refused to pay the Cates family's uninsured motorist claim notwith-

---

**2.** The law disfavors a windfall or double recovery. *Curtis v. Clem,* 689 N.E.2d 1261, 1265 (Ind.Ct.App.1997).

standing the terms of its own uninsured motorist provisions:

"Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no liability bond or policy applies at the time of the accident.

. . . .

4. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:

    a. Denies coverage; or

    b. Is or becomes insolvent.

Appellant's App. at 79. Pursuant to these terms, West Am clearly had an obligation to pay insurance proceeds to Cates once both Grinnell and Go America denied coverage to Montgomery. Yet West Am has continued to wait and watch for over four years rather than timely fulfill its contractual obligations. Had it paid the claim when it was due, West Am could have then pursued any subrogation claims it deemed appropriate under the terms of its contract. Then, any issues regarding these claims and West Am's right to reimbursement could have been fully presented to a tribunal for determination.

Of course, the question before the trial court was whether West Am was entitled to assert its subrogation claims as a matter of law. But, the right to subrogation may be waived or the insurer may be estopped from asserting it due to the insurer's unreasonable delay in satisfying its obligation under the policy. *Farm Bureau Mutual Ins. Co. v. Dercach,* 450 N.E.2d 537, 542 (Ind.Ct.App.1983). Here, without specific findings or conclusions, the trial court denied West Am's motion for summary judgment. We will affirm the denial of summary judgment if it is sustainable on any legal theory or basis found in the designated materials. We affirm the trial court's denial, because we believe that West Am's actions toward their insured raises a material question of fact, precluding summary judgment.

Whether West Am's delay was unreasonable, *see Id.,* and a material breach of the contract is a question of fact. *Smith v. State Lottery Com'n of Indiana,* 812 N.E.2d 1066, 1073 (Ind.Ct.App.2004), *reh'g denied, trans. denied.* Material questions of fact are not appropriate for resolution by summary judgment. *Smith,* 812 N.E.2d at 1073; Ind. Trial Rule 56(C).

Accordingly, we conclude that the trial court appropriately denied West Am's motion for summary judgment because there was a material issue of fact regarding whether West Am materially breached its contract with the Cates family in failing to pay under the terms of the insurance policy.

Affirmed.

RILEY, J., concurs.

MAY, J., dissents with opinion.

MAY, Judge, dissenting.

I would direct summary judgment for West Am, as the designated evidence reflects only that West Am delayed payment to Cates while it determined whether its liability to Cates would be reduced by amounts other entities paid to Cates. This an insurer may do so long as it does not act in bad faith. Cates does not argue West Am acted in bad faith and the majority does not so find. I must accordingly dissent.

That insurance companies may, in good faith, dispute claims has long been the rule in Indiana. *Erie Ins. Co. v. Hickman by Smith,* 622 N.E.2d 515, 520 (Ind.1993). A good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds for a recovery in tort for the breach of the obligation to exercise good faith. This is so even if it is ultimately determined that the insurer breached its contract. *Id.*

Our Supreme Court noted in *Erie* that the exercise of the right to disagree as to the amount of recovery might result in the intentional infliction of "temporal damage," but this damage is not compensable; the insurer is permitted to dispute its liability in good faith because of the prohibitive social costs of a rule that would make claims nondisputable. *Id.* By contrast, an insurer who denies liability knowing there is no rational, principled basis for doing so has breached its duty. *Id.*

In *Hopper v. Carey,* 810 N.E.2d 761 (Ind.Ct.App.2004), *trans. denied* 822 N.E.2d 981 (Ind.2004), Hopper was driving a fire truck insured by Continental Insurance when he lost control trying to avoid Carey's vehicle. The Hoppers sued Carey for negligent driving, Scott County and its contractor for negligent road paving, S & S Fire Apparatus for negligent design of the fire truck, and Continental for coverage as carrier for the Fire Department's underinsured motorist coverage. The Hoppers alleged Continental's insurance policy was applicable to their damages because Carey and Scott County were uninsured/underinsured motorists under that policy.

Scott County and its contractor were dismissed. The Hoppers dismissed their claims against S & S then settled with S & S for $750,000.00. The remaining defendants were Carey and Continental. The uninsured/underinsured motorist provision of Continental's policy provided for $500,000.00 in benefits. Continental moved for summary judgment on the ground it was not liable to the Hoppers under the policy because it was entitled to set-off the Hoppers' recovery from S & S. The trial court granted Continental's motion and we affirmed.

The UIM coverage provision in Continental's policy contained set-off language very similar to that in the case before us: "The Limit of insurance under this cover-age shall be reduced by all sums paid or payable by or for anyone who is legally responsible, including all sums paid under this Coverage Form's LIABILITY COV-ERAGE." 810 N.E.2d at 765.

The Hoppers responded to the motion for summary judgment by alleging bad faith in Continental's handling of the claim. They contended Continental should not have been able to avoid its obligation under the terms of the insurance policy by waiting, as did West Am in the case before us, until the Hoppers' recovery from other sources exceeded Continental's liability.

We noted Continental's delay could be attributed to the necessity of determining the degree of liability of the various parties:

> Indeed, whether Carey was an uninsured/underinsured motorist liable for Hopper's injuries was not undisputed, and had not been determined. Under such circumstances we do not believe Continental can be held to have been acting in bad faith in delaying action on Hopper's claim for uninsured/underinsured motorist benefits. For there to have been recovery under the uninsured/underinsured motorist provision, Carey must have been at fault and liable for Hopper's injuries. Continental had the right to await the determination of whether or not Carey was at fault before being called upon to pay the uninsured/underinsured motorist claim, as there may not have been an uninsured motorist.

810 N.E.2d at 766.

An insurer's obligation of good faith and fair dealing includes the obligation to refrain from: "(1) making an *unfounded* refusal to pay policy proceeds; (2) causing an *unfounded* delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim."

*Erie,* 622 N.E.2d at 519 (emphases supplied). A good faith dispute about the amount of a valid claim, or about whether an insured has a valid claim at all, will not supply the grounds for recovery in tort for the breach of the obligation to exercise good faith. *Id.* I would similarly find such a "good faith dispute" does not, as the majority appears to hold, estop an insurer from asserting or even attempting to determine its contractual setoff rights.

I would not characterize as an "*unfounded* refusal to pay policy proceeds" or an "*unfounded* delay in payment," *Id.*, West Am's decision to wait for Grinnell and Go America "to file declaratory judgment actions to determine whether they owed insurance coverage to [the driver who hit Cates]," slip. op. at 9, when the result of those declaratory actions might determine whether or to what extent West Am might be liable.

Our uninsured motorist laws are remedial in nature and should be construed in favor of the insured. *Town & Country Mut. Ins. Co. v. Hunter,* 472 N.E.2d 1265, 1269 (Ind.Ct.App.1985), *reh'g denied, trans. denied.*

> However, this concept cannot be taken to the extreme so that claims become nondisputable ... this would result in a prohibitive social cost to the insurance premium paying public. Courts must take care not to discourage honest litigation by allowing punitive damages against a party which is exercising its right to adjudicate a real dispute, even if that party is found to be in error and the litigation injures the other party.

*Id.*

The majority in the case before us avoids references to "bad faith" or "punitive damages" in describing West Am's decision to refrain from paying until the setoff amounts were determined, as its result would be unsupportable under either standard. But the majority's applica-

tion of estoppel principles to affirm the denial of West Am's summary judgment motion has much the same effect on West Am and on any other insurer who must now take our decision into account when deciding whether to "exercis[e] its right to adjudicate a real dispute." *Id.* I would reverse and direct summary judgment for West Am.

### ORDER

On February 28, 2007, the Court handed down its opinion in this appeal marked Memorandum Decisions, Not for Publication. The Appellees, by counsel, have filed a Motion to Publish. The Appellees state that this Court's opinion satisfies the criteria of Appellate Rule 65(1) and (3), and requests that this Court publish its Memorandum Decision handed down in this appeal.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The Appellees' Motion to Publish is GRANTED and this Court's opinion heretofore handed down in this cause on February 28, 2007, marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.

All panel members concur.