**EVERETT CASH MUTUAL INSURANCE COMPANY,**
Appellant–Defendant,

v.

**Rick TAYLOR and Katrina Taylor,**
Appellees–Plaintiffs.

No. 02A03–0808–CV–386.

Court of Appeals of Indiana.

April 8, 2009.

Rehearing Denied May 26, 2009.

Mark D. Ulmschneider, Andrew L. Teel, Steele Ulmschneider & Malloy, Fort Wayne, IN, Attorneys for Appellant.

Alan Verplanck, Eilbacher Fletcher, LLP, Fort Wayne, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Everett Cash Mutual Insurance Company ("Everett") appeals the trial court's denial of summary judgment in an action filed by Rick and Katrina Taylor. We reverse.

### Issues

The issues we address are:

I. whether an exclusion in a farm personal liability policy issued by Everett applies in this case; and

II. whether Everett is estopped from relying on that exclusion.

## Facts

The designated evidence most favorable to the Taylors as summary judgment non-movants is that on June 13, 2005, the Taylors purchased a farm personal liability policy from Everett. They indicated to insurance agent Jake Owens that they wanted "all risk" coverage. As is typical, however, the policy contained a number of exclusionary clauses. Among the things the policy excluded from coverage was the following:

> **bodily injury** to a person, including a **domestic employee,** if the **insured** has a workers' compensation policy covering the injury or if benefits are payable or are required to be provided by an **insured** under a workers' compensation, nonoccupational disability, occupational disease or like law....

App. p. 64. In fact, Everett has never underwritten worker's compensation insurance in Indiana.

On July 1, 2005, the Taylors employed an independent contractor, Sherlock Contract Painting ("Sherlock"), to paint a house, grain bin, and barn. The Taylors did not verify whether Sherlock had worker's compensation insurance before hiring them for the job, and in fact Sherlock had no such insurance. While painting the grain bin, Sherlock employee Christopher Collis came into contact with an electric wire, which resulted in injury to Collis. Collis filed a worker's compensation claim against Sherlock. Upon discovering that Sherlock had no worker's compensation insurance, Collis amended his claim to name the Taylors as a party for failing to verify whether Sherlock had such insur-

ance, pursuant to Indiana Code Section 22–3–2–14(b). Collis has not filed any tort-related claims against the Taylors.

Sometime after Collis was injured, Rick asked Owens whether the Everett policy would provide coverage for the incident, and Owens said that it would. However, Everett subsequently denied coverage for Collis' claim against the Taylors. On June 29, 2007, the Taylors filed suit against Everett, as well as Owens and two insurance agencies. The suit sought recovery against Everett on two theories: breach of contract and estoppel. Although this suit originally was stayed while Collis' worker's compensation action was pending, on January 28, 2008, Everett moved for summary judgment. On June 13, 2008, the trial court denied Everett's motion. The trial court certified this denial for interlocutory appeal and we have accepted jurisdiction.

## Analysis

When reviewing a denial of summary judgment, we apply the same standard as the trial court. *Auto–Owners Ins. Co. v. Harvey,* 842 N.E.2d 1279, 1282 (Ind.2006). Summary judgment is proper "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C); *Harvey,* 842 N.E.2d at 1282. We must construe all facts and reasonable inferences drawn from them in favor of the non-moving party. *Harvey,* 842 N.E.2d at 1282. We may affirm the denial of summary judgment if it is sustainable on any legal theory or basis found in the evidentiary matter designated to the trial court. *West American Ins. Co. v. Cates,* 865 N.E.2d 1016, 1020 (Ind.Ct.App.2007), *trans. denied.*

### I. Policy Exclusion

The first issue we address is whether the policy exclusion regarding

worker's compensation applies in this case.[1] Although the parties cite cases from other jurisdictions, we believe this case is readily resolved on the basis of Indiana law and standard principles of insurance policy interpretation. Insurance contracts are governed by the same rules of construction as other contracts. *Id.* The proper interpretation of an insurance policy, whether ambiguous or unambiguous, generally is a question of law appropriate for summary judgment. *Id.* "Although ambiguities in insurance policies are construed in favor of the insured, clear and unambiguous policy language must be given its ordinary meaning." *Id.*

 This issue requires us to consider Indiana Code Section 22–3–2–14, a somewhat obscure worker's compensation provision. It is doubtful that all small business operators or, as in this case, family farmers are aware of this statute. It provides in part:

[A]ny ... person, contracting for the performance of any work exceeding one thousand dollars ($1,000) in value by a contractor subject to the compensation provisions of IC 22–3–2 through IC 22–3–6, without exacting from such contractor a certificate from the worker's compensation board showing that such contractor has complied with section 5 of this chapter, IC 22–3–5–1, and IC 22–3–5–2, shall be liable to the same extent as the contractor for compensation, physi-

cian's fees, hospital fees, nurse's charges, and burial expenses on account of the injury or death of any employee of such contractor, due to an accident arising out of and in the course of the performance of the work covered by such contract.

Ind.Code § 22–3–2–14(b). In other words, under this statute if a third party contracts with an injured worker's employer for the performance of work, the third party is subject to liability for worker's compensation benefits to the same extent as the employer if the third party failed to obtain a certificate of compliance with the Worker's Compensation Act and the injury resulted from an accident arising out of and in the course of the performance of the work covered by the contract.[2] *See Rausch v. Reinhold,* 716 N.E.2d 993, 998 (Ind.Ct.App.1999), *trans. denied.* There is no dispute that this statute applies here, i.e., that the Taylors contracted with Sherlock to perform more than $1000 worth of work, that they failed to obtain a certificate that Sherlock had worker's compensation insurance, and that Collis was injured due to an accident arising out of and in the course of performance of the painting contract. Thus, the Taylors find themselves potentially liable for payment of worker's compensation benefits to Collis just as if they directly employed him.

 If we extract the language from the worker's compensation exclusion in the

---

1. The parties also dispute whether there is even an insurable "occurrence" under the Everett policy. Everett contends the relevant, uninsurable "occurrence" is the Taylors's failure to verify that Sherlock had worker's compensation insurance, while the Taylors contend that the relevant, insurable "occurrence" is Collis' injury in the first place. We need not resolve this issue, concluding that even if Collis' injury might otherwise have been an insurable "occurrence," it is subject to the exclusion regarding worker's compensation.

2. This statute does not apply to work performed on a person's owner occupied primary residence. *See* I.C. § 22–3–2–14(a)(*1*). Additionally, the Worker's Compensation Board must fix the order of payment of any claims, beginning with the injured person's immediate employer. *See* I.C. § 22–3–2–14(e). Thus, it appears Sherlock still will be the party primarily liable to Collis for any worker's compensation recovery, with the Taylors secondarily liable.

Everett policy that is not relevant to this case, it reads that there is no coverage for "**bodily injury** to a person . . . if benefits are payable or are required to be provided by an **insured** under a workers' compensation . . . law. . . ." App. p. 64. We conclude this language is clear and unambiguous. It excludes coverage for injuries that are or should be addressed through the worker's compensation system. More specifically, under Section 22–3–2–14, which is undoubtedly a provision of our Worker's Compensation Act, the Taylors find themselves potentially required to provide statutorily-mandated worker's compensation benefits to Collis. This situation fits within the plain language of the exclusion. The Taylors may not themselves have been able to purchase worker's compensation coverage, but they could have ensured that Sherlock did. Indeed, Section 22–3–2–14 required them to do so.

We note that the only claim Collis has made against the Taylors is that they failed to comply with Section 22–3–2–14; he has not stated any tort claims against them, such as for premises liability. If there was such a claim against the Taylors, our analysis might be different with respect to whether the Everett policy provides coverage. Specifically, we have held that in situations where a third party has hired an independent contractor but failed to certify worker's compensation coverage, and the third party also committed a tort against an injured employee, the employee may collect from the third party under both Section 22–3–2–14 and in an ordinary tort action. *See Rausch,* 716 N.E.2d at 998–99. The only question in this case is whether the Everett policy provides coverage for a claim made under Section 22–3–2–14. We hold that it does not.

## II. Estoppel

We next address whether, notwithstanding the worker's compensation exclusion, Everett is estopped from denying coverage to the Taylors for Collis' claim. Although Everett contends that estoppel and the related doctrine of waiver cannot expand the scope of coverage of an insurance contract, there are at least two recognized exceptions to that rule. *See Transcontinental Ins. Co. v. J.L. Manta, Inc.,* 714 N.E.2d 1277, 1281 (Ind.Ct.App. 1999). The first exception applies where an insurer or its agent misrepresents the extent of coverage to an insured, thereby inducing the insured to purchase coverage that does not in fact cover the disputed risk. *Id.* The second exception applies if an insurer defends an action on behalf of an insured without a reservation of rights, but with knowledge of a defense to coverage. *Id.* The Taylors essentially seek coverage under the first exception.

Generally, an insured has a duty to read and become familiar with the contents of an insurance policy. *National Mut. Ins. Co. v. Curtis,* 867 N.E.2d 631, 635 (Ind.Ct.App.2007). However, reasonable reliance upon an agent's representations as to what will be covered under a policy can override the insured's duty to read the policy. *Filip v. Block,* 879 N.E.2d 1076, 1084 (Ind.2008) (citing *Village Furniture, Inc. v. Associated Ins. Managers, Inc.,* 541 N.E.2d 306, 308 (Ind. Ct.App.1989), *trans. denied* ). "In general, this exception negates an insured's duty to read part of the policy if an agent insists that a particular hazard will be covered." *Id.* An insurance company may be estopped from relying on the express language of a policy if an agent insists to a prospective purchaser that the policy will insure against a specific hazard about which the prospect is particularly concerned, and that hazard in fact materializes. *Id.*

Here, there is no designated evidence to suggest that the Taylors thought they

were paying for and receiving coverage for the precise situation that arose here: a work-related injury to an employee of an independent contractor whom the Taylors failed to confirm had worker's compensation insurance and who in fact lacked such insurance. Every insurance policy has certain exceptions to coverage. In the absence of evidence that the Taylors were led to believe, *at the time they originally purchased the policy*, that it would provide coverage in a specific situation just like the one in this case, there can be no estoppel. An insured's belief that they have purchased "all risk" coverage cannot, without more, be sufficient to negate all exclusions in an insurance policy.

Moreover, any representations by Owens *after* the accident occurred that there would be coverage is insufficient to support a claim of estoppel. There is no indication in the record that the Taylors relied on Owens' after-the-fact representation to their detriment. In other words, this does not appear to be a case where Everett undertook to defend the Taylors without a reservation of rights. Despite Owens' initial representation, it does not appear that Everett ever defended the Taylors against Collis' claim.

### Conclusion

The Everett policy clearly and unambiguously excludes coverage for the particular claim Collis has made against the Taylors. Additionally, there is no genuine issue of material fact that would support the Taylors's estoppel argument against Everett. We reverse the denial of Everett's motion for summary judgment and direct that judgment be entered in Everett's favor.

Reversed.

MATHIAS, J., concurs.

BAILEY, J., dissents with opinion.

BAILEY, Judge, dissenting.

I respectfully dissent from the majority's decision to reverse the denial of Everett's motion for summary judgment, because I agree with the trial court that Everett did not demonstrate its entitlement to summary judgment. In part, the trial court denied Everett's motion because there exists a genuine issue of material fact with regard to the estoppel claim. The designated record reveals a dispute as to whether the Taylors were led to believe that they were purchasing coverage for the risk that they would, at some point in the conduct of their farming operation, engage in an error or omission. The failure herein to secure evidence of appropriate worker's compensation coverage is a classic example of a negligent omission.

I agree with the majority that Indiana adheres to the general rule that the doctrine of estoppel is not available to create or extend the scope of coverage of an insurance contract. *Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1028 (Ind.Ct.App.1999), *trans. denied.* However, an exception exists when an insurer misrepresents the extent of coverage to an insured, thereby inducing the insured to purchase coverage which does not in fact cover the disputed risk. *Id.*

According to the Taylors' complaint, "[Jake] Owens learned and knew that the Taylors wanted 'all risk' coverage, to particularly include coverage for any invitee, licensee, contractor, or employee of contractor who may come upon the Residence and/or Farm" and "Owens assured the Taylors they were fully covered for all risk under the Policy." (App.21–22.) In support of its motion for summary judgment, Everett designated the Affidavit of Shirley Mock, wherein she averred that Everett does not write worker's compensation poli-

cies of insurance and could not have written such a policy for the Taylors.

Whether a worker's compensation policy could have been written misses the point. In this instance, the Taylors are not claiming the need for a worker's compensation policy. Rather, they are making a claim for their negligence in failing to request proof of insurance from the painting contractor. As a result of this negligent omission, they are now secondarily obligated to pay the employee according to the worker's compensation schedule. Thus, it is a question of fact whether the policy was represented to be the "all risk" coverage that included the Taylors' negligent omission for which they believe they are insured. As the trial court correctly observed, "Ms. Mock's Affidavit does not deal with the assurances of Owens which is the basis of the estoppels [sic] claim that ties Everett to this case under agency principles." (App.19.)

The logical assumption when reading a worker's compensation insurance provision is that it pertains to a relationship between an employer and an employee who is injured in the course and scope of his employment. As a Monday morning quarterback, I can conceive of an interpretation of the exclusionary language that encompasses the little known and onerous statutory provision relied upon by Everett; however, from the perspective of a business operator seeking the advice of their insurer to provide "all risk" coverage, the oblique exclusionary language does not correlate with the insured's expectation of coverage because it does not inform the insured who has no employees of the enormous exposure identified herein.

It seems eminently reasonable to me that purchasers of a "Farm Personal Liability Coverage" policy represented to be a comprehensive policy for their farming operation needs would have relied upon professional representations and believed they were receiving coverage for negligent errors and omissions in the conduct of their farming operation. Nonetheless, at this juncture, we need not resolve any disputed issues of material fact. *See Estate of Jerome Mintz v. Connecticut General Life Ins. Co. et al.,* 903 N.E.2d 516, 522 (Ind., 2009) (reversing a grant of summary judgment in favor of Gruber, a "servicing agent" who allegedly gave certain reassurances to the insured, and observing "whether Gruber's actions proximately caused the Mintzes' injuries is highly fact sensitive and more appropriately left for resolution by a fact-finder than resolved by summary disposition").

I believe that the Taylors are entitled to their day in court and would affirm the trial court's denial of Everett's motion for summary judgment.