The NATIONAL MUTUAL INSURANCE COMPANY and Celina Insurance Company, Appellants–Defendants,

v.

Jason CURTIS, Brad Curtis, and Rhonda Curtis, Appellees–Cross–Claimants,

Justin P. Beaulieu, Appellee–Plaintiff.

No. 01A04–0610–CV–617.

Court of Appeals of Indiana.

June 5, 2007.

Dane L. Tubergen, Fort Wayne, IN, Attorney for Appellants.

John O. Feighner, Aaron J. Butler, Haller & Colvin, P.C., Roberta L. Renbarger, Fort Wayne, IN, Attorneys for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Respondents, The National Mutual Insurance Co. and Celina Insurance Group (collectively, National Mutual), appeal the trial court's Order on Cross–Motions for Summary Judgment. In its Order, the trial court denied the motion for summary judgment filed by National Mutual and granted the motion for summary judgment filed by Appellees–Cross–Claimants, Jason Curtis, Brad Curtis, and Rhonda Curtis (collectively, the Curtises), finding that National Mutual's insurance policy provides coverage to the Curtises against the claim filed by Appellee–Plaintiff, Justin P. Beaulieu (Beaulieu).

We affirm.

### ISSUE

National Mutual raises two issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court erred by concluding that National Mutual's homeowner's policy, issued to the Curtises, provided coverage against Beaulieu's claim for injuries under the personal liability provisions because the policy did not clearly express an exclusion of liability coverage for injuries arising out of the ownership or use of a trampoline.

### FACTS AND PROCEDURAL HISTORY

In June of 1998, National Mutual Insurance Co., owned by Celina Insurance Group, issued a homeowner's insurance policy to the Curtises, with an initial coverage period from June 30, 1998 to June 30, 1999. The main policy form of the homeowner's policy encompassed eighteen pages, containing, among others, the definitional section, the liability coverage, and exclusions thereto. In addition, the Curtises received fourteen pages of supplemental information, described as forms and endorsements and which included a section entitled "Supplemental Extensions." (Appellants' App. p. 72).

Specifically, with regard to liability coverage, the main policy form stated:

### SECTION II—LIABILITY COVERAGES

**COVERAGE E—Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages be-

cause of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured;" and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

(Appellants' App. p. 148). Under the subsequent section, Exclusions, National Mutual excluded the following item from coverage:

### SECTION II—EXCLUSIONS

**1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others** do not apply to "bodily injury" or "property damage":

a. . . .

(Appellants' App. p. 148). An additional exclusion to this section is included in the Supplemental Extensions part of the fourteen-page supplemental information, and states:

Under this section [*i.e.,* exclusions from liability coverage], Exclusion m. is added:

m. Arising out of the ownership, maintenance or use of a trampoline.

(Appellants' App. p. 164). At the time the policy was entered into, the Curtises acknowledge receiving a complete copy of the insurance policy, including the Supplemental Extensions form.

In October 1998, National Mutual issued a new edition of the Supplemental Exten-

sions form. At the anniversary date of the policy in June 1999, the Curtises received a renewal declaration sheet that designated this new edition as applicable to their renewed policy and extended the policy's term to June 30, 2000. Again, the trampoline exclusion was included at the bottom of this form. However, this new edition of the Supplemental Extensions form was never sent to the Curtises.

On June 6, 2000, Beaulieu attended a party hosted by the Curtises to celebrate Jason's graduation from high school. During the party, Beaulieu jumped on the trampoline in the Curtises' backyard, sustaining a compound fracture to his left leg.

On June 3, 2002, Beaulieu filed a Complaint against the Curtises, seeking damages for his personal injury. On May 25, 2005, Beaulieu amended his Complaint, adding National Mutual as a party and seeking a declaration that the Curtises' homeowner's insurance policy provided liability coverage for his injuries. Thereafter, on August 11, 2005, National Mutual answered Beaulieu's Complaint and, at the same time, filed a counterclaim together with a cross-claim against the Curtises, each requesting a declaration that coverage was excluded under the Curtises' policy for injuries arising out of the ownership, maintenance or use of a trampoline. Subsequently, on September 6, 2006, the Curtises filed an answer to Beaulieu's amended Complaint and a cross-claim against National Mutual, seeking coverage under the policy. All parties filed motions for summary judgment regarding their respective coverage positions. On August 29, 2006, a hearing on the motions was held. The following month, on September 26, 2006, the trial court entered its Order, denying National Mutual's motion for summary judgment and granting the Curtises' cross-motion for summary judgment, de-

claring that National Mutual owes a duty to defend against Beaulieu's Complaint.

National Mutual now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

National Mutual disputes the trial court's denial of its motion for summary judgment. Specifically, the insurance company contends that as it was the Curtises' duty to examine the contents of their insurance policy, which included the exclusionary clause in clear, easily understandable and unambiguous language, it should be enforced against the insureds. On the other hand, the Curtises and Beaulieu, focusing on the placement of the exclusionary clause, assert that its inclusion in the Supplemental Extensions section amounted to an ambiguity which should result in National Mutual providing coverage for Beaulieu's injuries.

### I. *Standard of Review*

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 47 (Ind.Ct.App.2004). Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* Accordingly, the grant of summary judgment must be reversed if the record dis-

closes an incorrect application of the law to the facts. *See Ayres v. Indian Heights Volunteer Fire Dep't, Inc.*, 493 N.E.2d 1229, 1234 (Ind.1986).

We observe that in the present case, the trial court entered findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com*, 816 N.E.2d at 48. However, such findings offer this court valuable insight into the trial court's rationale for its judgment and facilitate appellate review. *Id.*

### II. *Placement of the Trampoline Exclusion*

The interpretation of an insurance policy is a question of law. *Briles v. Wausau Ins. Co.*, 858 N.E.2d 208, 213 (Ind.Ct.App.2006). When interpreting an insurance policy, our goal is to ascertain and enforce the parties' intent as manifested in the insurance contract. *Id.* We construe the policy as a whole and consider all of the provisions of the contract and not just the individual words, phrases or paragraphs. *Id.* If the language is clear and unambiguous, we give the language its plain and ordinary meaning. *Id.* An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning. *Id.* However, an ambiguity does not exist merely because the parties proffer differing interpretations of the policy language. *Id.* We must accept an interpretation of the contract language that harmonizes the provisions, rather than one that supports conflicting versions of the provisions. *Id.* Additionally, the power to interpret contracts does not extend to changing their terms and we will not give insurance policies an unreasonable con-

struction to provide additional coverage. *Id.*

Here, the parties request us to reconcile the seemingly contradictory duty of an insurance company to provide an unambiguous and clear policy with the duty of an insured to read his insurance policy. Essentially, National Mutual contends that the Curtises' homeowner's policy consisted of a basic policy form with modifying endorsements, all written in clear and unambiguous language. As it is an insured's duty to acquaint himself with his policy, failing to do so, he cannot be heard to complain. Conversely, the Curtises, supported by Beaulieu, assert that the structure of the homeowner's policy established the ambiguity in the instant case. Because the trampoline exclusion was added into the Supplemental Extensions and placed at the end of the form, at least fourteen pages further than the policy's other liability exclusions, its very location is not conspicuous and amounted to an ambiguity in the policy.

In Indiana, it is well established that an insured has a general duty to become familiar with the contents of an insurance policy. *Wiggam v. Associates Financial Services of Indiana, Inc.,* 677 N.E.2d 87, 90 (Ind.Ct.App.1997), *trans. denied; see also Village Furniture, Inc. v. Associated Insurance Managers, Inc.,* 541 N.E.2d 306, 308 (Ind.Ct.App.1989), *reh'g denied, trans. denied.* On the other hand, there is scant Indiana case law establishing that the structural complexity of a policy can result in an ambiguity. Besides the sole case relied upon by the Curtises, *Hessler v. Federal Casualty Co. of Detroit, Mich.,* 190 Ind. 68, 129 N.E. 325, 326 (1921), our research discovered a more recent opinion issued by this court in *Redar v. Allstate Ins. Co.,* 497 N.E.2d 566, 567 (Ind.Ct.App.1985).

In *Hessler,* our supreme court refused to enforce an exclusion of coverage that contradicted statements made elsewhere in the insurance policy. *Id.* at 326. *Hessler's* fire insurance policy prominently proclaimed broad accident coverage and then, further along in the policy "printed in small type, without any further headlines" was an exclusion of certain coverage. *Id.* The supreme court refused to enforce the exclusion "hidden away in small type, in clause (m) following, without headlines, other clauses ..." and instead enforced the "unequivocal statement on the back of the policy, presented in a manner as to catch the eye of the insured." *Id.* at 327.

In *Redar,* Redar contended that the exclusionary clauses of the policy were not conspicuously placed in the contract since they were inserted on pages two and three, after the omnibus clause. *Id.* at 567. Upon reviewing the policy, we stated that:

> Though the exclusionary clause followed the omnibus clause by one page, we do not believe this creates any ambiguity with regard to who is or is not covered under the policy. We do not find it unreasonable for the general coverage of the omnibus clause to be limited by specific exclusions which follow, clearly marked, on the next page of the contract. Nor can we say, as a matter of law, that such placement is inconspicuous so as to excuse an insured from being aware of such exclusions.

*Id.* at 568.

Other jurisdictions have more recently addressed insurers' attempts to unobtrusively add limitations to coverage. Clarifying the guidelines concerning the format of an insurance policy, the California supreme court stated that "[a] coverage limitation is conspicuous when it is positioned and printed in a manner that will attract the reader's attention." *Boghos v. Certain*

*Underwriters at Lloyd's of London,* 36 Cal.4th 495, 30 Cal.Rptr.3d 787, 115 P.3d 68, 74 (2005). Likewise, in *National Mut. Ins. Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488, 496 (1987), overruled on other grounds by *Potesta v. U.S. Fidelity & Guar. Co.,* 202 W.Va. 308, 504 S.E.2d 135 (1988), the court stated:

> [a]n insurer wishing to avoid liability on a policy purporting to give general or comprehensive insurance coverage must make exclusionary clauses conspicuous, plain and clear, placing them in such a fashion as to make obvious their relationship to other policy provisions and must bring such provisions to the attention of the insured.

■ It is undeniable that insurers have the right to limit their coverage of risks and, therefore, their liability by imposing exceptions, conditions, and exclusions; however, to be enforced, these limitations must be clearly expressed and must be consistent with public policy. *See Property–Owners, Ins. Co. v. Ted's Tavern, Inc.,* 853 N.E.2d 973, 978 (Ind.Ct.App.2006). In the case at bar, the Curtises' homeowner's insurance policy consists of a form entitled "Homeowners 3 Special Form," containing eighteen pages of explanations of various coverages. (Appellants' App. p. 137). Each section is headlined with a bolded, capitalized, and interlineated heading which explains the contents of the particular section. Section II of the policy, commencing on page twelve, specifies the policy's liability coverages. On the same page, emphasized by bolding, capitalization, and interlineations, several exclusions to the liability coverage are listed. The exclusion section encompasses approximately the next two pages, listing exclusions "a" through "l," and is followed by a section titled "Additional Coverages," and "Conditions" (Appellants' App. pp. 148–154).

Following the eighteen pages of main policy provisions, National Mutual adds a four-page 'Special Provisions—Indiana' section, defining special limits to the policy, and a single page liability coverage for home day care business. The final form attached to the policy consists of two pages, entitled Supplemental Extensions, which starts with the explanation that "[t]he coverages in your policy are extended as," and is followed by five individual clauses extending the coverage amounts stated in the main policy. (Appellants' App. p. 163). Next, National Mutual uses the remainder of the Supplemental Extensions form to edit certain exclusions from the policy by replacing exclusion "g" from the policy with the rewritten "g" in the Supplemental Extensions. (Appellants' App. p. 164). On page two, National Mutual, finally and without significant emphasis, bolding, or capitalization, provides:

Under this section, Exclusion m is added:

> m. Arising out of the ownership, maintenance or use of a trampoline.

(Appellants' App. p. 164).

While the insured is always supposed to read the policy, only a very hardy soul would have plowed through all of the fine print and separate sections in an effort to understand the many terms and conditions listed in the main policy and the convoluted additions thereto. On reaching the main policy's fifteenth page, a reading of the liability coverage and its exclusions would have furnished reassurance of coverage in the event of personal injuries incurred in the use of the trampoline. Further investigation of the main policy would not have divulged anything to the contrary. Nowhere was there any straightforward and unconditional statement that the policy was not intended to protect the homeowners in this situation. It is not until fourteen pages of long, fine

print later, in a section misleadingly entitled Supplemental Extensions, that—almost as an afterthought—National Mutual excludes personal injuries arising out of the ownership, maintenance, and use of a trampoline. Unlike the different sections of the main policy, the Supplemental Extensions two-page form does not employ any significant bolding, capitalization, or interlineations to clarify and set apart the separate exclusions.

Moreover, the designated evidence indicates that National Mutual's main policy was originally written in 1991 and has not been updated since. Instead of updating the main policy to include the trampoline exclusion, National Mutual chose to insert the exclusion into an addition to the main policy, the Supplemental Extensions issued in 1995. When contracting for homeowner's insurance in 1998, the Curtises received both forms. Although National Mutual issued a new edition of its Supplemental Extensions later that same year, the insurer did not update its main policy, but rather continued to include the trampoline exclusion as the final item in the Supplemental Extensions form. Although it had years to do so, National Mutual never bothered to update its main policy, letting the trampoline exclusion languish in the Supplemental Extensions section.

In sum, based on the evidence before us and the established authorities, we find the trampoline exclusion to be ambiguous. In addition to the policy's confusing structure, the exclusion itself is inserted, as a final item, in the Supplemental Extensions form; it is not found in the enumerated exclusionary provisions under the relevant section of the main policy. Although we acknowledge the fact that even when a policy is long, and pertinent language is not contained on a single page, this does not, in itself, render the policy structurally ambiguous; nevertheless, here, the confu-

sion does not lie in the policy's language but rather in the structural ambiguity where the liability coverage and exclusions are inserted in the main policy, with an additional exclusion clause buried in a completely unrelated section fourteen pages later. The structural complexity of the policy as a whole is such that the disputed clause is obscured and a reasonable person would not realize its existence and application, regardless of his duty to read the policy. Accordingly, we hold as a matter of law that the placement of the trampoline exclusion is inconspicuous, amounting to an ambiguity in the policy. Therefore, we affirm the trial court's Order. *See AutoXchange.com, Inc.,* 816 N.E.2d at 47.

We reiterate that the result reached today does not do violence to the legitimate and understandable interests of insurers in limiting their liability coverage. However, if an insurance carrier desires to exclude coverage, this should be spelled out for the policyholder in clear and unmistakable language with conspicuous and plain positioning.

*CONCLUSION*

Based on the foregoing, we conclude the trial court properly found that National Mutual's homeowner's policy, issued to the Curtises, provided coverage against Beaulieu's claim for injuries under the personal injury provisions because the policy did not clearly express an exclusion of liability coverage for injuries arising out of the ownership or use of a trampoline.

Affirmed.

NAJAM, J., and BARNES, J., concur.