

**ATTORNEYS FOR APPELLANT**

John C. Trimble
Richard K. Shoultz
Wandini B. Riggins
Lewis Wagner, LLP
Indianapolis, Indiana

**ATTORNEYS FOR APPELLEES**

David W. Stone IV
STONE Law Office & Legal
Research
Anderson, Indiana

Rom Byron
Ken Nunn Law Office
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Empire Fire and Marine Insurance Company, *Appellant-Defendant*, <br><br> v. <br><br> Charlene Frierson and Roderick Frierson, *Appellees-Plaintiffs*. | January 21, 2016 <br><br> Court of Appeals Case No. 49A02-1503-CT-126 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Timothy W. Oakes, Judge <br><br> Trial Court Cause No. 49D13-1111-CT-42812 |

**Brown, Judge.**

[1] Empire Fire and Marine Insurance Company ("Empire") appeals from the trial court's order denying its motion for summary judgment in favor of Charlene Frierson and Roderick Frierson (collectively, the "Friersons") and the denial of its motion to correct error. Empire raises three issues, one of which we find dispositive and which we revise and restate as whether the court erred in denying Empire's motion for summary judgment. We reverse.

## Facts and Procedural History

[2] On April 25, 2011 Charlene Frierson was involved in an automobile accident with Ashley Talsma. At the time, Talsma was insured under an automobile liability insurance policy issued by Allstate which provided bodily injury liability coverage in the amount of $25,000 for each person and $50,000 for each occurrence. Before trial, Talsma's carrier tendered $25,000 in policy liability limits to the Friersons. Charlene was insured under a separate automobile policy issued by Allstate, and the Friersons sought Underinsured Motorist ("UIM") benefits from Allstate, which also tendered $25,000 of UIM coverage after setting off Talsma's liability limits.

[3] Charlene was operating an automobile that she had rented from Enterprise. She completed a rental agreement with Enterprise under which she purchased optional Supplemental Liability Protection ("SLP"). The rental agreement (the "Rental Agreement") provided in part:

> 7. Responsibility to Third Parties. . . . Except to the extent
> required by the motor vehicle financial responsibility laws of the
> applicable state or otherwise by law, Owner [Enterprise] does not

extend any of its motor vehicle financial responsibility or provide insurance coverage to Renter . . . . Renter agrees to provide coverage for damage resulting from the operation of the vehicle.

9. Personal Injury Protection and Uninsured/Underinsured Motorist Protection. Except as required by law, Owner [Enterprise] does not provide Personal Injury Protection, No Fault Benefits or Medical Payment Coverage (collectively "PIP") or Uninsured/Underinsured Motorist Protection ("UM/UIM") through this Agreement. If Owner is required by law to provide PIP and/or UM/UIM, Renter expressly selects such protection in the minimum limits with the maximum deductible and expressly waives and rejects PIP and/or UM/UIM limits in excess of the minimum limits required by law.

Appellant's Appendix at 43.

[4] In addition, the Rental Agreement in Paragraph 17, titled "Optional Supplemental Liability Protection," contained a summary of the optional SLP product. Paragraph 17 first states: "THIS IS A SUMMARY ONLY AND IS SUBJECT TO ALL PROVISIONS, LIMITATIONS, EXCEPTIONS AND EXCLUSIONS OF THE SLP POLICY. UPON REQUEST, A COPY OF THE POLICY IS AVAILABLE FOR REVIEW. . . ." *Id.* Paragraph 17 further states that when a renter elects to purchase SLP, the renter is provided with "minimum financial responsibility limits (at no charge to Renter) as outlined in the applicable motor vehicle financial responsibility laws of the state where the Vehicle is operated AND excess Insurance provided by the Insurance policy . . . ." *Id.* Also, under the heading "SLP Exclusions," it states: "For all exclusions, see the SLP policy issued by Empire Fire and Marine Insurance Company.

Here are a few key exclusions: . . . (d) Liability arising out of or benefits payable under any uninsured or underinsured motorist law, in any state . . . ." *Id.* The SLP purchased by Charlene was provided through Empire (the "Empire Policy"). The designated evidence does not indicate that Charlene requested a copy of the Empire Policy, and she was not provided with a copy of such policy. *Id.* at 45.

[5] Enterprise Holdings, Inc. ("Enterprise") is the policyholder under the Empire Policy, which covers all of Enterprise's rental vehicles, including the automobile rented by Charlene. The Empire Policy states that it provides "excess auto liability insurance," *id.* at 95, and it contains language excluding Uninsured Motorist ("UM") and UIM coverage unless specifically listed for certain states as follows:

> **D. EXCLUSIONS**
>
> > In addition to the exclusions contained in the "underlying insurance," this insurance does not apply to the following:
> >
> > \* \* \* \* \*
> >
> > 5. Liability arising out of benefits payable under any uninsured or underinsured motorist law, in any state.

*Id.* at 96. By endorsement, Empire provided UM and UIM coverage in five specified states, but Indiana is not on the list.[1]

On November 7, 2011, the Friersons filed a complaint for damages against Talsma, which they later amended on January 24, 2013 to include Empire.[2] Empire filed an appearance on December 1, 2011, and on January 9, 2012, filed its Answer, Affirmative Defenses and Request for Jury Trial. On October 1, 2012, Empire filed a motion for summary judgment in which it sought a determination that the Empire Policy did not provide either UM or UIM coverage to the Friersons. On November 29, 2012, the Friersons filed their response to Empire's motion.

On January 9, 2013, a hearing was held on Empire's motion, and on January 15, 2013, the court entered an order summarily denying the motion.

A trial was held on November 5 and 6, 2014, and ultimately the jury returned a verdict in favor of the Friersons in the amount of $185,000 which was subsequently reduced to a net verdict of $129,500 based on comparative fault. On December 9, 2014, Empire filed a Consolidated Motion for Set-off and a motion to correct error, and on January 28, 2015, the court held a hearing on the consolidated motions. On February 3, 2015, the court entered an order

[1] The specified states are Florida, Louisiana, New Hampshire, Vermont, and West Virginia.

[2] The amended complaint also named Allstate Property and Casualty Insurance Company as a defendant; however, that party was later dismissed.

denying Empire's motion to correct error but granting in part its request for set off against the verdict, reducing the judgment against Empire to $79,500 after setting off the $50,000 received by the Friersons from Talsma and Allstate.

## *Discussion*

The dispositive issue is whether the court erred in denying Empire's motion for summary judgment. We review an order for summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.*

The construction of a contract is particularly well-suited for de novo appellate review, because it generally presents questions purely of law. *Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 577 (Ind. 2013) (citing *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind. 1997)). Insurance contracts are governed by the same rules of construction as any other contract. *Id.* Clear and unambiguous policy language is given its ordinary meaning in order to accomplish the primary goal of contract interpretation: "to determine the intent of the parties at the time the contract was made as disclosed by the

language used to express their rights and duties." *Id.* at 577-578 (quoting *First Fed. Sav. Bank of Ind. v. Key Markets, Inc.*, 559 N.E.2d 600, 603 (Ind. 1990)).

[11] Where contractual language is ambiguous, we generally resolve those ambiguities in favor of the insured, but will not do so if such an interpretation fails to harmonize the provisions of the contract as a whole. *Id.* at 578. However, the failure to define a contractual term does not necessarily make that term ambiguous, nor does a simple disagreement about the term's meaning. *Id.* "Rather, an ambiguity exists where the provision is susceptible to more than one reasonable interpretation." *Id.*

[12] This court has observed that "[i]nsurance companies are free to limit their liability, so long as they do so in a manner consistent with public policy as reflected by case or statutory law." *Gheae v. Founders Ins. Co.*, 854 N.E.2d 419, 423 (Ind. Ct. App. 2006). Also, "[a]n insurance policy that is unambiguous must be enforced according to its terms, even those terms that limit an insurer's liability." *Haag v. Castro*, 959 N.E.2d 819, 823 (Ind. 2012). Where an ambiguity exists, the policy is generally construed in favor of the insured. *USA Life One Ins. Co. of Ind. v. Nuckolls*, 682 N.E.2d 534, 538 (Ind. 1997). This is particularly the case where a policy excludes coverage. *Id.*; *Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945 (Ind. 1996), *reh'g denied*. However, when a case involves a dispute between a third party and an insurer, the court does not construe it strictly against the insurer, but determines the general intent of the contract from a neutral stance. *Burkett v. Am. Family Ins. Grp.*, 737 N.E.2d 447, 452 (Ind. Ct. App. 2000); *Ind. Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.*, 260 Ind. 32,

34, 291 N.E.2d 897, 899 (1973). In addition, an ambiguity does not exist simply because an insured and an insurer disagree about the meaning of a provision, but only if reasonable people could disagree about the meaning of the contract's terms. *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002), *reh'g denied*; *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 244 (Ind. 2000) ("An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning.").

[13] Empire argues that its policy clearly and unambiguously excluded UM and UIM coverage except in five states, none of which are Indiana, and that Enterprise accordingly paid no premium for UIM coverage for vehicles rented and operated in Indiana. It argues that in 2009 subsection (d) was added to Ind. Code § 27-7-5-2, which specifically addresses the issue presented, and was a direct response by the legislature to the Indiana Supreme Court's holding in *United Nat'l Ins. Co. v. DePrizio*, 705 N.E.2d 455 (Ind. 1999), "that a commercial umbrella policy providing excess automobile liability coverage qualified as 'an automobile liability policy or motor vehicle liability policy' and insurers were to provide UM and UIM coverage under" Ind. Code § 27-7-5-2(a). Appellant's Brief at 10. Empire also directs our attention to a United States Federal District Court case, *Ohio Cas. Ins. Co. v. Herring-Jenkins*, 830 F. Supp. 2d 566 (N.D. Ind. 2011), interpreting subsection (d), as well as another state court case finding that the policy issued in that case, which Empire suggests is identical to its policy, finding the policy in that case to be "a true excess policy." Appellant's Brief at 14 (citing *Collins v. Randall*, 836 So.2d 352 (La. App. 2002)). To the

extent the Friersons assert that Charlene requested "full coverage," Empire contends that their argument assumes the Empire Policy is an "automobile liability or motor vehicle liability policy of insurance" when in fact it is a "commercial umbrella or excess liability policy." Appellant's Reply Brief at 4.

[14] The Friersons assert that Charlene averred in a designated affidavit that she "asked the Enterprise salesman for 'full coverage' to insure" the vehicle, and that the Rental Agreement was "in very small print and very difficult to read." Appellees' Brief at 11. They argue that this court has previously held that "if an insurance carrier desires to exclude coverage, this should be spelled out for the policyholder in clear and unmistakable language with conspicuous and plain positioning," and that "[t]here is nothing clear or unmistakable about any claimed exclusion of UM/UIM coverage in the only partly legible fine print." *Id.* (quoting *Nat'l Mut. Ins. Co. v. Curtis*, 867 N.E.2d 631, 637 (Ind. Ct. App. 2007)). The Friersons assert that Empire did not establish that the policy at issue in *Collins* is the same as the Empire Policy, and they direct our attention to a case from the Arizona Supreme Court discussing "the realities of purchasing insurance in connection with a rental car transaction . . . ." *Id.* at 12 (citing *Philadelphia Indem. Ins. Co. v. Barerra*, 200 Ariz. 9, 21 P.3d 395 (2001)).[3]

---

[3] The Friersons assert that Empire waived its right to claim it was not required to provide UIM coverage, arguing that it did not object to certain jury instructions. Because we hold that the court erred in denying summary judgment in Empire's favor, however, we need not address this argument.

[15]     At the time of the accident, Ind. Code § 27-7-5-2, titled "Coverage for bodily injury or death; required provisions; rejection," provided in relevant part:

>    (a) Except as provided in subsection (d), the insurer shall make available, in each automobile liability or motor vehicle liability policy of insurance which is delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property to others arising from the ownership, maintenance, or use of a motor vehicle, or in a supplement to such a policy, the following types of coverage:

>>    (1) in limits for bodily injury or death and for injury to or destruction of property not less than those set forth in IC 9-25-4-5 under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death, and for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles for injury to or destruction of property resulting therefrom; or

>>    (2) in limits for bodily injury or death not less than those set forth in IC 9-25-4-5 under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy provisions who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.

The uninsured and underinsured motorist coverages must be provided by insurers for either a single premium or for separate premiums, in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy, unless such coverages have been rejected in writing by the insured. However, underinsured motorist coverage must be made available in limits of not less than fifty thousand dollars ($50,000). At the insurer's option, the bodily injury liability provisions of the insured's policy may be required to be equal to the insured's underinsured motorist coverage. Insurers may not sell or provide underinsured motorist coverage in an amount less than fifty thousand dollars ($50,000). Insurers must make underinsured motorist coverage available to all existing policyholders on the date of the first renewal of existing policies that occurs on or after January 1, 1995, and on any policies newly issued or delivered on or after January 1, 1995. Uninsured motorist coverage or underinsured motorist coverage may be offered by an insurer in an amount exceeding the limits of liability specified in the bodily injury and property damage liability provisions of the insured's policy.

* * * * *

(d) An insurer is not required to make available the coverage described in subsection (a) in a commercial umbrella or excess liability policy, including a commercial umbrella or excess liability policy that is issued or delivered to a motor carrier (as defined in IC 8-2.1-17-10) that is in compliance with the minimum levels of financial responsibility set forth in 49 CFR Part 387.

(Subsequently amended by Pub. L. No. 116-2011, § 2 (eff. July 1, 2011); Pub. L. No. 125-2012, § 403 (eff. July 1, 2012); Pub. L. No. 148-2013, § 1 (eff. July 1, 2013)).[4]

[16] We find that the Empire Policy is indeed an excess liability policy under Ind. Code § 27-7-5-2(d). In Section I, Paragraph A, Subparagraph 1 of the Empire Policy, located on the first page of the policy, states unequivocally: "This policy provides excess auto liability insurance . . . ." Appellant's Appendix at 95. It also states, under the heading "**GENERAL CONDITIONS**," the following: "UNDERLYING INSURANCE. The policy or policies of insurance, bond, cash deposits or self-insurance must be maintained in full effect by the 'policyholder' or 'insured', during the term of this policy as a condition precedent to coverage. . . ." *Id.* at 98. The Rental Agreement is consistent that the Empire Policy is an excess policy. In Paragraph 17, found on the third page of the four page document, under the heading "ADDITIONAL TERMS AND CONDITIONS, it states that the SLP product provides the renter with "minimum financial responsibility limits (at no charge to Renter) as outlined in the applicable motor vehicle financial responsibility laws of the state where the Vehicle is operated AND *excess Insurance* provided by the Insurance policy," which is a reference to the Empire Policy. *Id.* at 43 (emphasis added). Because the Empire Policy is an excess liability policy, it is not required to provide

---

[4] The current version of Ind. Code § 27-7-5-2 is nearly identical to the 2010 version.

UM/UIM coverage. Ind. Code § 27-7-5-2(d); *see also Herring-Jenkins*, 830 F. Supp. 2d at 582-583 (noting that the General Assembly enacted Ind. Code § 27-7-5-2(d) as a response to the Indiana Supreme Court's opinion in *DePrizio*, which previously held that "the uninsured/underinsured motorist statute applied to all umbrella policies that provided third party auto liability coverage").

[17] The crux of the Friersons' claims on appeal is that the exclusion of UM/UIM coverage was not spelled out for Charlene in clear and unmistakable language with conspicuous and plain positioning in the Rental Agreement, relying on this court's statements in *Curtis*. In *Curtis*, this court examined whether a homeowner's policy issued by National Mutual to the Curtises provided coverage against a claim by Justin Beaulieu for personal injury liability for injuries arising out of the ownership or use of a trampoline. 867 N.E.2d at 632. The court held that the placement of the trampoline exclusion in the policy was inconspicuous and amounted to an ambiguity in the policy. *Id.* at 637. In so holding, the court stated that "only a very hardy soul would have plowed through all of the fine print and separate sections in an effort to understand the many terms and conditions listed in the main policy and the convoluted additions thereto," noting that "[o]n reaching the main policy's fifteenth page, a reading of the liability coverage and its exclusions would have furnished reassurance of coverage in the event of personal injuries incurred in the use of the trampoline." *Id.* at 636. The court stated that "[f]urther investigation of the main policy would not have divulged anything to the contrary," and that

"[n]owhere was there any straightforward and unconditional statement that the policy was not intended to protect the homeowners in this situation." *Id.* It noted that "[i]t is not until fourteen pages of long, fine print later, in a section misleadingly entitled Supplemental Extensions, that—almost as an afterthought—National Mutual excludes personal injuries arising out of the ownership, maintenance, and use of a trampoline," and further that "[u]nlike the different sections of the main policy, the Supplemental Extensions two-page form does not employ any significant bolding, capitalization, or interlineations to clarify and set apart the separate exclusions." *Id.* at 636-637.

[18] The court also discussed the "scant Indiana case law establishing that the structural complexity of a policy can result in an ambiguity." The court first discussed *Hessler v. Fed. Cas. Co. of Detroit, Mich.*, 190 Ind. 68, 129 N.E. 325 (1921), in which the Indiana Supreme Court "refused to enforce an exclusion of coverage that contradicted statements made elsewhere in the insurance policy." *Id.* at 635. The Court observed that the fire insurance policy at issue "prominently proclaimed broad accident coverage and then, further along in the policy 'printed in small type, without any further headlines' was an exclusion of certain coverage." *Id.* (quoting *Hessler*, 129 N.E. at 326). The Court "refused to enforce the exclusion 'hidden away in small type, in clause (m) following, without headlines, other clauses . . .' and instead enforced the 'unequivocal statement on the back of the policy, presented in a manner as to catch the eye of the insured.'" *Id.* (quoting *Hessler*, 129 N.E. at 327).

[19] The *Curtis* court also discussed the case of *Redar v. Allstate Ins. Co.*, 497 N.E.2d 566 (Ind. Ct. App. 1985), wherein appellant Redar argued "that the exclusionary clauses of the policy were not conspicuously placed in the contract since they were inserted on pages two and three, after the omnibus clause." *Id.* (citing *Redar*, 497 N.E.2d at 567). We disagreed, holding that although "the exclusionary clause followed the omnibus clause by one page, we do not believe this creates any ambiguity with regard to who is or is not covered under the policy," and that it was not "unreasonable for the general coverage of the omnibus clause to be limited by specific exclusions which follow, clearly marked, on the next page of the contract." *Id.* (quoting *Redar*, 497 N.E.2d at 568). We also noted that we could not say, "as a matter of law, that such placement is inconspicuous so as to excuse an insured from being aware of such exclusions." *Id.* (quoting *Redar*, 497 N.E.2d at 568).

[20] We find *Curtis* to be distinguishable. First, to the extent that the Friersons assert that the Rental Agreement was comprised of fine print which was difficult to read, we note that such fine print is only two and one-half pages in length. The Rental Agreement states in Paragraph 7 that Enterprise "does not extend any of its motor vehicle financial responsibility or provide insurance coverage to Renter," and in Paragraph 9, titled "Personal Injury Protection and Uninsured/Underinsured Motorist Protection," that Enterprise "does not provide Personal Injury Protection, No Fault Benefits or Medical Payment Coverage (collectively 'PIP') or Uninsured/Underinsured Motorist Protection ('UM/UIM') through this Agreement." Appellant's Appendix at 43. Unlike in

*Hessler*, neither the Empire Policy nor the Rental Agreement purports to provide broad coverage only to further down the policy list certain exclusions. In fact, the top of the Rental Agreement's discussion of the SLP in Paragraph 17 contains language in all caps that the SLP is "SUBJECT TO ALL PROVISIONS, LIMITATIONS, EXCEPTIONS AND EXCLUSIONS OF THE SLP POLICY." *Id.* That same paragraph notes specifically, under the heading "SLP Exclusions," that "[l]iability arising out of or benefits payable under any uninsured or underinsured motorist law, in any state" is excluded from coverage. *Id.* We further note that the Empire Policy itself contains easily-readable typeface, is six pages in length, and states on the second page of the policy, under the heading "**EXCLUSIONS**," that "Liability arising out of benefits payable under any uninsured or underinsured motorist law, in any state" is excluded from coverage. *Id.* at 96. Under the circumstances, we cannot say that the rule espoused in *Curtis* applies.

[21] The Empire Policy purchased by the Friersons for SLP coverage did not provide UIM coverage to the Friersons. Accordingly, we conclude that the court erred when it denied Empire's motion for summary judgment.[5]

---

[5] Because we reverse the trial court's denial of Empire's motion for summary judgment, we need not address its arguments that: (A) the court treated the denial of Empire's motion for summary judgment as a grant of summary judgment in favor of the Friersons on the issue of coverage and accordingly impermissibly limited the issues at trial to liability and damages; and (B) the court should have reduced its UIM exposure to zero because there should have been a limit of $50,000 imposed.

## *Conclusion*

For the foregoing reasons, we grant Empire's motion for summary judgment.

Reversed.

Riley, J., and Altice, J., concur.