

FILED

Aug 22 2023, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

George M. Plews
Sean M. Hirschten
Plews Shadley Racher & Braun, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
AXA INSURANCE COMPANY

Thomas B. Bays
Scott A. Harkness
Norris Choplin Schroeder, LLP
Indianapolis, Indiana

ATTORNEY FOR INTERESTED
PARTY ALLIANZ GLOBAL
INSURANCE COMPANY

Lyndsay I. Ignasiak
Katherine M. Haire
Reminger Co., LPA
Indianapolis, Indiana

ATTORNEYS FOR INTERESTED
PARTIES ZURICH AMERICAN
INSURANCE COMPANY AND
AMERICAN GUARANTEE AND
LIABILITY INSURANCE
COMPANY

Kyle A. Lansberry
Michael R. Giordano
Antonia B. Ianniello
Jeremy Glen
Lewis Wagner, LLP
Indianapolis, Indiana

ATTORNEYS FOR INTERESTED
PARTY XL INSURANCE OF
AMERICA

Bradford S. Moyer
John P. Eggum
Plunkett Cooney, P.C.

# IN THE
# COURT OF APPEALS OF INDIANA

Technicolor USA, Inc.;
Technicolor S.A.; Thomson
Consumer Electronics Television
Taiwan Limited; and Thomson
Consumer Electronics Bermuda
Limited,

*Appellants-Plaintiffs,*

v.

Insurance Company of North
America; Indemnity Insurance
Company of North America; XL
Insurance America, Inc. f/k/a
Winterthur International
America Insurance Company;
American Guarantee and
Liability Insurance Company;
CIGNA Insurance Company
n/k/a ACE American Insurance
Company; CIGNA Property &
Casualty n/k/a ACE Property &
Casualty Insurance Group;
Zurich American Insurance
Company; AXA Insurance
Company; Allianz Global
Insurance Company,

*Appellees-Defendants.*

August 22, 2023

Court of Appeals Case No.
22A-PL-2094

Appeal from the
Marion Superior Court

The Honorable
Heather A. Welch, Judge

Trial Court Cause No.
49D01-1810-PL-40578

**Baker, Senior Judge.**

## Statement of the Case

[1] Technicolor USA, Inc., Technicolor S.A., Thomson Consumer Electronics Television Taiwan Limited (TCETVT), and Thomson Consumer Electronics Bermuda Limited (TCEB) (collectively, the Technicolor Entities), appeal from the trial court's order denying the Technicolor Entities' cross-motion for summary judgment, granting summary judgment in favor of AXA Insurance Company (AXA), and entering final judgment on the issue of AXA's duty to defend and indemnify the Technicolor Entities under the AXA Primary and Umbrella Policies for potential damages arising out of the Second Taiwan Class Action filed against them in Taiwan. The Technicolor Entities claimed the insurance companies were contractually required to cover their losses related to that lawsuit and sought declaratory relief to determine the coverage issues. We affirm.

## Issue

[2] The Technicolor Entities argue the court incorrectly: (1) determined that the claims alleged in the Second Taiwan Class Action fall outside the "coverage territory" as defined by the AXA Primary Policies, precluding coverage and a duty to defend; and (2) concluded there was no coverage pursuant to the Following Form Endorsements of the AXA Umbrella Policies. We restate the

dispositive issue as follows:  Do the AXA Primary Policies provide underlying insurance for the damages alleged in the Second Taiwan Class Action such that AXA has a duty to defend the Technicolor Entities pursuant to any of its policies?  We conclude the AXA Primary Policies do not, and affirm the trial court's judgment.

## Facts and Procedural History[1]

[3]     On May 9, 2016, a group of over 1,000 former workers at factories in Taiwan sued the Technicolor Entities in Taiwan (the Second Taiwan Class Action) for injuries suffered allegedly due to exposure to chlorinated solvents at those factories and in adjacent dormitories.  Technicolor USA was voluntarily dismissed from the action.  The Taiwan District Court held TCETVT liable for its own torts, and held TCEB and Technicolor S.A. vicariously liable as controlling companies under Taiwanese law, as it had done in the First Taiwan Class Action.[2]

[4]     AXA refused to defend the Technicolor Entities under the terms of its policies. In response, the Technicolor Entities filed a complaint for damages and declaratory relief in Marion Superior Commercial Court on October 9, 2018, seeking a determination of their rights under comprehensive general liability

---

[1] Oral argument was held in the Indiana Court of Appeals Courtroom on July 21, 2023.  We thank counsel for the quality of their written and oral advocacy.

[2] Insurance coverage issues with respect to the First Taiwan Class Action were addressed by this Court in *Thomson Inc., v. Insurance Co. of North America*, 11 N.E.3d 982 (Ind. Ct. App. 2014), *trans. denied.*

policies, both primary and umbrella, sold by various insurers, including AXA. This appeal addresses only the Technicolor Entities' request for coverage under AXA's policies.

[5] AXA issued five Primary Policies and five Umbrella Policies to Thomson, Inc./Technicolor USA,[3] beginning in 2009 and continuing through 2013.

[6] In its Primary Policies, AXA agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." Appellants' App. Vol. II, p. 114. The policies stated that AXA "will have the right and duty to defend the insured against any 'suit' seeking those damages." *Id.* But AXA "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply." *Id.* The "insurance applies to 'bodily injury" . . . only if (1) The 'bodily injury' . . . is caused by an 'occurrence' that takes place in the 'coverage territory.'" *Id.*

[7] The AXA Primary Policies define coverage territory in pertinent part as follows:

> a. The United States of America (including its territories and possessions), Puerto Rico and Canada;
> b. International waters or airspace, but only if the injury or

---

[3] Thomson, Inc. changed its name to Technicolor USA, Inc. in 2010 during the term of its insurance policies with AXA.

damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

c.       All other parts of the world if the injury or damage arises out of:

(1)  Goods or products made or sold by you in the territory described in Paragraph a. above;

(2)  The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

(3)  "Person and advertising injury" offenses that take place through the Internet or similar electronic means of communication

Provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

*Id.* at 126.

[8]     The AXA Umbrella Policies each say that, "Any additional insured under any policy of 'underlying insurance' will automatically be an insured under this insurance." *Id.* at 173.  Because Technicolor S.A., TCEB, and TCETVT are insureds under AXA's Primary Policies, they are insureds under the AXA Umbrella Policies.

[9]     AXA's Umbrella Policies define "coverage territory" as:

> a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;
> b.  International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or
> c.  All other parts of the world if the injury or damage arises out

of:

(1)  Goods or products made or sold by you in the territory described in a. above.

(2)  The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business;

(3)  "personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

Provided the insured's responsibility to pay damages is determined in a suit on the merits, in the territory described in a. above or in a settlement we agree to.

*Id.* at 126.

[10]  The 2009 AXA Umbrella Policy contains this following form endorsement language:

It is agreed that this policy shall not apply to any liability for Bodily Injury and/or Personal and Advertising Injury or Property Damage for the following, *unless such liability is covered by valid and collectible Underlying Insurance as described in the Schedule of Underlying Insurance,* and then only for such hazards for which coverage is afforded under said Underlying Insurance.

1.  Premises Liability
2.  Products/Completed Operations Liability
3.  Contractual Liability
4.  Employers Liability
5.  Automobile Liability

Appellants' App. Vol. VIII, p. 105 (emphasis added).

[11]     The remaining four AXA Umbrella Policies contain this Following Form

Endorsement language:

> It is agreed that this policy shall not apply to any liability for
> Bodily Injury and/or Personal and Advertising Injury or
> Property Damage for the following, *unless such liability is covered by
> valid and collectible Underlying Insurance as described in the Schedule of
> Underlying Insurance*, and then only for such hazards for which
> coverage is afforded under said Underlying Insurance:
>
> 1.      Commercial General Liability Coverage:  Coverage A—
> Bodily Injury and Property Damage Liability & Coverage B—
> Personal and Advertising Injury Liability
> 2.      Automobile Liability Coverage
> 3.      Employers Liability Coverage

*Id.* at 105-06 (emphasis added).

[12]     The parties moved and cross-moved for summary judgment.  The court's July

19, 2021 order resolving these issues resulted in a determination that AXA

owed no duty to defend under its primary and umbrella policies as the claims

were based on events that occurred outside the policies' coverage territory

limits.[4]

---

[4] The court's ruling included decisions regarding the other insurers; however those rulings are not properly before this Court because they have not been reduced to a final, appealable judgment.  During oral argument however, the Court was informed by counsel for XL Insurance America, Inc. that they have filed a notice of appeal from the trial court's separate final, appealable order as to them.

[13] The Technicolor Entities disagreed with the court's rationale and filed a Motion To Revise the July 19, 2021 Order Dealing with the AXA Umbrella Policies. Technicolor disputed the court's holding that "the Following Form Endorsements in the Umbrella Policies extended a duty to defend only claims that were also covered under the AXA Primary Policies based on the plain language of the Following Form Endorsements." Appellants' App. Vol. II, p. 83. AXA asked the court to confirm its holdings and moved for summary judgment on the issue of its "duty to indemnify Technicolor under AXA Policies for damages incurred in the [Second Taiwan Class Action.]" *Id.* Technicolor counter moved for summary judgment. *Id.*

[14] The Technicolor Entities argued that the court (1) improperly incorporated the AXA Primary Policy "coverage territory" language when interpreting the AXA Umbrella Policies; (2) improperly omitted the "for the following" phrase in its interpretation of the Following Form Endorsements; (3) failed to distinguish "liability" from "hazard" in the Following Form Endorsements; and (4) failed to apply proper insurance canons when making the umbrella coverage determination. *Id.* at 85-97. The court denied the Technicolor Entities' motion to revise. The court also granted AXA's motion for summary judgment and denied the Technicolor Entities' cross motion for summary judgment. This appeal ensued.

# Discussion and Decision[5]

## Summary Judgment Standard of Review

When reviewing a trial court's grant of a motion for summary judgment, our standard of review is similar to that of the trial court. *Stabosz v. Friedman*, 199 N.E.3d 800, 807 (Ind. Ct. App. 2022) (*quoting Burris v. Bottoms Up Scuba-Indy, LLC*, 181 N.E.3d 998, 1003-04 (Ind. Ct. App. 2021)), *trans. denied*. "Summary judgment is appropriate only where the moving party has shown that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Id.* at 807. "All factual inferences must be construed in favor of the non-moving party, and all doubts as to the existence of a material issue must be resolved against the moving party." *Id.* "Summary judgment is a high bar for the moving party to clear in Indiana." *Id.*

"We will not reweigh the evidence but will liberally construe all designated material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial." *Id.* (quoting *Perkins v. Fillio*, 119 N.E.3d 1106, 1110-11 (Ind. Ct. App. 2019)). "The party who lost at the trial court has the burden to persuade the appellate court that the trial court

---

[5] The Technicolor Entities also raised arguments under the AXA Policies' Controlling Interest Endorsements, Named Insured Endorsements, and asserted that the "settlement we agree to" language was an independent basis for coverage. We need not address those arguments as they do not affect or alter our decision. Although the Controlling Interest Endorsement initially was a basis for the court's July 19, 2019 order as to AXA, it was not one of the bases set out in the court's August 3, 2022, final, appealable order on the Technicolor Entities' Motion to Revise.

erred." *Id.* "A trial court's grant of summary judgment is clothed with a presumption of validity." *Id.* And "[a] grant of summary judgment may be affirmed by any theory supported by the designated materials." *Id.*

## Contract Interpretation

[3] "Interpretation of an insurance policy presents a question of law that is particularly suitable for summary judgment." *State Auto. Mut. Ins. Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 848 (Ind. 2012). "Clear and unambiguous language in insurance policy contracts, like other contracts, should be given its plain and ordinary meaning." *Cinergy Corp. v. Associated Elec. & Gas Ins. Servs., Ltd.*, 865 N.E.2d 571, 574 (Ind. 2007). "Policy terms are interpreted from the perspective of an ordinary policyholder of average intelligence. If reasonably intelligent persons may honestly differ as to the meaning of the policy language, the policy is ambiguous." *Gasser v. Downing*, 967 N.E.2d 1085, 1087 (Ind. Ct. App. 2012) (citation omitted). "However, an ambiguity does not exist merely because the parties proffer differing interpretations of the policy language." *Buckeye State Mut. Ins. Co. v. Carfield*, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009), *trans. denied* (2010).

[4] "Under Indiana law, insurance policies must be construed so as to effectuate indemnification to the insured or the beneficiary." *Am. Econ. Ins. Co. v. Liggett*, 426 N.E.2d 136, 144 (Ind. Ct. App. 1981). "Where any reasonable construction can be placed on a policy that will prevent the defeat of the insured's indemnification for a loss covered by general language, that

construction will be given." *Id.* However, "[w]e construe the policy as a whole and consider all of the provisions of the contract and not just the individual words, phrases or paragraphs." *Nat'l Mut. Ins. Co. v. Curtis*, 867 N.E.2d 631, 634 (Ind. Ct. App. 2007). "We must accept an interpretation of the contract language that harmonizes the provisions, rather than one that supports conflicting versions of the provisions." *Id.* And we "should construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless." *Hammerstone v. Indiana Ins. Co.*, 986 N.E.2d 841, 846 (Ind. Ct. App. 2013). "[T]he power to interpret contracts does not extend to changing their terms and we will not give insurance policies an unreasonable construction to provide additional coverage." *Curtis*, 867 N.E.2d at 634.

## I. Coverage under the AXA Primary Policy

The Technicolor Entities' arguments to the trial court in support of its position that coverage exists included: (1) the "settlement we agree to" language recognizes the possibility of coverage, regardless of the limits set by the definition of coverage territory; and, (2) contrary to the court's prior decision, Technicolor had satisfied subsections (c)(1) and (c)(2) of the coverage territory definitions in AXA's Primary and Umbrella Policies.

Starting with their second argument, we observe that, in pertinent part, AXA's Primary Policies explicitly provide coverage and take on a duty to defend the Technicolor Entities in suits where the Technicolor Entities become legally obligated to pay damages because of bodily injury caused by an occurrence that

takes place in the "coverage territory." Appellants' App. Vol. II, p. 126. "Coverage Territory," as defined in those AXA Primary Policies, begins with the United States (including its territories and possessions), Puerto Rico, and Canada.

[7] The Second Taiwan Class Action sought damages for bodily injuries allegedly incurred by the employees' exposure to chlorinated solvents at the Technicolor Entities' factories and in adjacent dormitories in Taiwan. And the Technicolor Entities' liability was determined in a suit brought in Taiwan, a country not covered under the AXA Primary Policies' "coverage territory" definition. There is no coverage under subsection (a) of the coverage territory definition under the plain meaning of the AXA Primary Policies' language.

[8] The only other subsection, which was argued to the trial court, was subsection (c), defining "coverage territory" as,

> c.  All other parts of the world if the injury or damage arises out of:
> (1) Goods or products made or sold by you in the territory described in Paragraph a. above;
> (2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or
> (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication
> Provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

Appellants' App. Vol. II, p. 126. And of subsection (c)'s subsections, only subsections (1) and (2) are under consideration here.

[9] By the explicit terms of AXA's Primary Policies' language, the Second Taiwan Class Action claims are not covered by either of those subsections. First, under subsection (c)(1), the alleged injuries did not arise out of goods or products made or sold in the United States (including its territories and possessions), Puerto Rico, and Canada, because the injuries suffered were allegedly due to exposure to chlorinated solvents used in the manufacturing process at those factories and in adjacent dormitories in Taiwan. Nor did the injuries arise out of a finished good or product that was subsequently sold in the United States, Puerto Rico, or Canada.

[10] The Technicolor Entities claim that the underlying injury was caused in part by the alleged concealment of contamination at the factories in the groundwater wells in Taiwan under subsection (c)(2). The Technicolor Entities asserted that the existence of the contamination was described in a report commissioned by GE and Thomson Consumer Electronics, Inc., and completed in part by Technicolor USA employee Richard Dyer. Dyer, a U.S. resident, visited Taiwan as part of his job responsibilities. The Technicolor Entities argue that subsection (c)(2) was met by designation of that evidence.

[11] However, the court found that Dyer's involvement in completing the report in Taiwan occurred after the environmental contamination was revealed to the public. The court held it would be incongruent to accept the Taiwan District

Court's conclusion that Technicolor USA was excused from liability, but to disregard that holding and find that its agent could provide the basis for coordinating the harms for which Technicolor S.A., TCETVT, or TCEB were found liable. Consequently, the Technicolor Entities have failed to show that claims arose out of Dyer's activities in Taiwan, and more importantly, that as a Technicolor USA employee, his actions could provide the basis for the Technicolor Entities' liability, where Technicolor USA had been dismissed from the Second Taiwan Class Action. There is no coverage under subsection (c)(2).

[12] We need not reach the Technicolor Entities' first argument regarding the settlement language at the end of the definition of coverage territory. The Technicolor Entities have not designated evidence showing the existence of coverage under (c)'s subsections. And the settlement language is not drafted as a separate subsection. Rather, it, along with the requirement that the insured's responsibility to pay damages is determined in a suit on the merits in the United States, Puerto Rico, or Canada, comes into play only after the requirements of subsection (a), (b), (c)(1), (c)(2), or (c)(3) first have been established.

[13] There simply is no coverage for the Second Taiwan Class Action claims under the AXA Primary Policies. And this determination informs the rest of our analysis.

## Coverage under the AXA Umbrella Policies

[14] The Technicolor Entities argue that the Following Form Endorsements of the AXA Umbrella Policies provide coverage for the Second Taiwan Class Action claims. We disagree.

[15] The AXA Umbrella Policies' Following Form Endorsements contain language stating that the policy "shall not apply to any liability for Bodily Injury and/or Personal And Advertising Injury or Property Damage for the following, unless such liability is covered by valid and collectible Underlying Insurance as described in the Schedule of Underlying Insurance . . . ." *Id.* at 105.

[16] The Technicolor Entities presented several arguments to the trial court in favor of its interpretation that coverage exists under the AXA Umbrella Policies and reiterate them on appeal. One of the arguments was that the general language of the Following Form Endorsement does not override the more specific language of the AXA Umbrella Policies, such as the definition of "coverage territory." Another argument was that the AXA Primary Policies' narrower definition of "coverage territory" was not incorporated in the AXA Umbrella Policies, and, therefore, is inapplicable.

[17] However, looking at the plain language of the policies, there first must be valid and collectible underlying insurance for the AXA Umbrella Policy language to apply before analyzing the interpretation the Technicolor Entities suggest. *See Cinergy*, 865 N.E.2d at 574 ("Clear and unambiguous language in insurance policy contracts, like other contracts, should be given its plain and ordinary

meaning."). Because we have determined there is no valid and collectible underlying insurance available under the AXA Primary Policies, there is no coverage available under the Following Form Endorsements of the AXA Umbrella Policies.

## Conclusion

[18] For the foregoing reasons, we affirm the trial court's judgment.

[19] Affirmed.

Bailey, J., and Crone, J., concur.